TUCKER ELLIS LLP
David J. Steele – SBN 209797
david.steele@tuckerellis.com
Howard A. Kroll – SBN 100981
howard.kroll@tuckerellis.com
Steven E. Lauridsen – SBN 246364
steven.lauridsen@tuckerellis.com
Janie L. Thompson – SBN 291622
janie.thompson@tuckerellis.com
515 South Flower Street
Forty-Second Floor
Los Angeles, CA 90071-2223
Telephone: (213) 430-3400
Facsimile: (213) 430-3409

Attorneys for Plaintiffs
Coachella Music Festival, LLC and
Goldenvoice, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| COACHELLA MUSIC FESTIVAL, LLC and GOLDENVOICE, LLC,<br><br>            Plaintiffs<br><br>      v.<br><br>LIVE NATION ENTERTAINMENT, INC., BLUEHOST INC. d/b/a UNIFIED LAYER, and DOES 1-20<br><br>            Defendants | Case No. 2:21-cv-09631<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND AN ORDER TO SHOW CAUSE AS TO WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE** |

TUCKER ELLIS LLP
Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

# Table of Contents

**Page**

I.    INTRODUCTION ............................................................................................1

II.    STATEMENT OF FACTS ..............................................................................3

    A.    Plaintiffs' business and their trademark and service mark rights. ...........................................................................................3

    B.    The Infringing Conduct .........................................................................6

        1.    Direct Infringement by Twenty-Nine Palms...............................6

        2.    Evidence of Actual Confusion .......................................................9

        3.    Defendants' Contributory Infringement.................................. 10

III.    PLAINTIFFS ARE ENTITLED TO A TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION UNDER 15 U.S.C. § 1116(A). ................................................................. 12

    A.    Plaintiffs possess a strong likelihood of success on the merits of their contributory trademark infringement claims. .......................... 13

        1.    Plaintiffs are likely to establish Twenty-Nine Palms' direct infringement of the COACHELLA Marks. ...................... 14

        2.    Defendants are also Contributorily Liable for Infringement. ................................................................................ 20

    B.    Plaintiffs will suffer irreparable harm if an injunction is not issued. ................................................................................................. 21

    C.    The balance of equities tilts in favor of granting injunctive relief. .................................................................................................. 23

    D.    Granting the injunction is in the public interest. .................................. 24

    E.    Plaintiffs did not delay in seeking relief.............................................. 24

IV.    CONCLUSION............................................................................................ 25

# Table of Authorities

**Page(s)**

**Cases**

*Accuride Int'l, Inc. v. Accuride Corp.*,
  871 F.2d 1531 (9th Cir. 1989) ................................................................. 15

*Adidas Am., Inc. v. Skechers USA, Inc.*,
  2016 WL 591760 (D. Or. Feb. 12, 2016) ................................................. 22

*adidas-Am., Inc. v. Payless Shoesource, Inc.*,
  546 F. Supp. 2d 1029 (D. Or. 2008) ........................................................ 19

*Alliance for the Wild Rockies v. Cottrell*,
  632 F.3d 1127 (9th Cir. 2011) ................................................................. 13

*AMF Inc. v. Sleekcraft Boats*,
  599 F.2d 341 (9th Cir. 1979) ....................................................... 15, 17, 19

*Brookfield Commns., Inc. v. West Coast Entertainment Corp.*,
  174 F.3d 1036 (9th Cir. 1999) ........................................................... 15, 19

*Coach, Inc. v. Celco Customs Services Co.*,
  2013 WL 12122691 (E.D.N.Y. Sept. 30, 2019) ...................................... 25

*Costello Publishing Co. v. Rotelle*,
  670 F.2d 1035 (D.C. Cir. 1981) ............................................................... 25

*Filipino Yellow Pages, Inc. v. Asian Journal Publs., Inc.*,
  198 F.3d 1143, 1146 (9th Cir. 1999) ....................................................... 14

*GoTo.com, Inc. v. Walt Disney Co.*,
  202 F.3d 1199 (9th Cir. 2000) ................................................................. 16

*Herb Reed Enters. v. Florida Entment. Mgmt.*,
  736 F. 3d 1239 (9th Cir. 2013) .......................................................... 13, 22

*Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*,
  150 F.3d 1042 (9th Cir. 1998) ................................................................. 15

*KP Permanent Make-Up, Inc. v. Lasting Impression, Inc.*,
  543 U.S. 111 (2004) ................................................................................ 14

TUCKER ELLIS LLP

Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

*Lockheed Martin Corp. v. Network Solutions, Inc.*,
    No. CV 96–7438 DDP (ANx),
    1997 WL 381967 (C.D. Cal. Mar. 19, 1997) ...............................................................25

*Lockheed Martin Corp. v. Network Solutions, Inc.*,
    194 F.3d 980 (9th Cir. 1999) ....................................................................... 13, 20

*Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*,
    658 F.3d 936 (9th Cir. 2011) ................................................................................21

*McCormack v. Hiedeman*,
    694 F.3d 1004 (9th Cir. 2012) .............................................................................12

*Nutri/System, Inc. v. Con-Stan Industries, Inc.*,
    809 F.2d 601 (9th Cir. 1987) ...............................................................................18

*Official Airline Guides v. Goss*,
    6 F.3d 1385 (9th Cir. 1993) .......................................................................... 15, 19

*Opticians Ass'n of Am. v. Independent Opticians of Am.*,
    920 F.2d 187 (3d Cir. 1990) ................................................................................24

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
    494 F.3d 788 (9th Cir. 2007 ................................................................................13

*Power Balance LLC v. Power Force LLC*,
    2010 WL 5174957 (C.D. Cal. Dec. 14, 2010) ......................................................24

*Reno Air Racing Assoc., Inc. v. McCord*,
    452 F.3d 1126 (9th Cir. 2006) .............................................................................12

*Specialties West, Inc. v. Milon-Digiorgio Enters.*,
    559 F.3d 985 (9th Cir. 2009) ...............................................................................24

*Surfvivor Media, Inc. v. Survivor Prods.*,
    406 F.3d 625 (9th Cir. 2005) ...............................................................................20

*Temple v. Synthes Corp.*,
    498 U.S. 5 (1990) .................................................................................................25

*Thane Int'l, Inc. v. Trek Bicycle Corp.*,
    305 F.3d 894 (9th Cir. 2002) ...............................................................................15

TUCKER ELLIS LLP
Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Theta Chi Fraternity, Inc. v. Leland Stanford Junior Univ.*,
  212 F. Supp. 3d 816 (N.D. Cal. 2016) ...................................................................... 14, 21

*Two Pesos, Inc. v. Taco Cabana, Inc.*,
  505 U.S. 763 (1992) .................................................................................................... 15

*Wilson v. Watt*,
  703 F.2d 395 (9th Cir. 1983) ...................................................................................... 13

*Winter v. Natural Resources Defense Council*,
  55 U.S. 7 (2008) ......................................................................................................... 13

**Statutes**

15 U.S.C. § 1057 .............................................................................................................. 14

15 U.S.C. § 1116 ......................................................................................................... 13, 21

**Rules**

Fed. R. Civ. P. 65 ........................................................................................................ 12, 23

**Treatises**

Cal. Prac. Guide Fed. Civ. Pro. Before Trial (Apr. 2021 Update) .................................. 23

## I.   INTRODUCTION

Plaintiffs Coachella Music Festival, LLC and Goldenvoice, LLC (collectively, "Plaintiffs") require an immediate restraining order and injunctive relief from this Court because the Defendants in this case are deliberately contributing to the infringement of Plaintiffs' well-known COACHELLA trademarks and service marks, despite repeated requests to cease and desist. More specifically, Defendants Live Nation Entertainment, Inc. ("Live Nation") and Bluehost Inc. d/b/a Unified Layer ("Unified Layer", and together with Live Nation, "Defendants") bear contributory liability for the direct infringement by the Twenty-Nine Palms Band of Mission Indians, operating as Coachella Crossroads LLC ("Twenty-Nine Palms").[1] Twenty-Nine Palms is intentionally trading on the goodwill of Plaintiffs' well-known Coachella Valley Music and Arts Festival ("COACHELLA")[2] by operating a directly competitive live music event that it has named COACHELLA DAY ONE 22 in direct imitation of how Plaintiffs market the first day of their own festival—namely, COACHELLA DAY ONE. Twenty-Nine Palms is also hosting its directly competitive live music events at a venue in close proximity to COACHELLA that it has named COACHELLA CROSSROADS.

Like Plaintiffs' COACHELLA festival, Twenty-Nine Palms' COACHELLA DAY ONE 22 festival is advertised as an outdoor live music event that features numerous forms

---

[1] As discussed in the Complaint (ECF No. 1), Twenty-Nine Palms is not named in this action because it has asserted through counsel that it is entitled sovereign immunity, which it has not waived, rendering it not subject to suit.

[2] Plaintiffs' COACHELLA is one of the most critically acclaimed music festivals in the world. COACHELLA is a multi-day festival which features multiple bands, performing artists, food vendors, camping, and outdoor stages. COACHELLA is a sold-out event which brings an aggregated attendance of nearly 750,000 attendees to Southern California each April. The COACHELLA festival is an annual festival, although it was not held in person in 2020 and 2021 due to the COVID-19 pandemic; however, a virtual COACHELLA event marketed as COUCHELLA was held instead. The COACHELLA festival is scheduled to return April 15-17, 2022 and April 22-24, 2022.

TUCKER ELLIS LLP

Cleveland ● Columbus ● Denver ● Los Angeles ● San Francisco

of entertainment and artists. Moreover, Twenty-Nine Palms has incorporated "Day One" and Plaintiffs' well-known and federally-registered COACHELLA mark, which imitates the way that Plaintiffs identify their COACHELLA festival using "Weekend One", "Weekend Two", "Day One", "Day Two", and "Day Three". Indeed, Twenty-Nine Palms has even copied Plaintiffs' advertising, promotional, and marketing materials, including incorporating similar color schemes and design elements (e.g. a Ferris wheel and silhouettes of palm trees and the mountains surrounding the Coachella Valley). Shown below are representative examples of Plaintiffs' promotional materials on the left and Twenty-Nine Palms' on the right:

*Plaintiffs' Advertising:*                    *Twenty-Nine Palms' Advertising:*

    

Declaration of Jason Bernstein ("Bernstein Decl.") Exs. 22, 23.

Despite notice of the infringement and repeated requests from Plaintiffs to exercise their control over the infringing activity and stop contributing to these unlawful acts, Live Nation, through its ticketing segment Ticketmaster, continues to advertise events at COACHELLA CROSSROADS, including COACHELLA DAY ONE 22, and continues to sell tickets to the event. On or around December 9, 2021, Twenty-Nine Palms even began offering complimentary tickets to COACHELLA DAY ONE 22, which it lists as "Coachella Complimentary Offer." The offer, which is available on Ticketmaster, is shown below:



Bernstein Decl. Ex. 25.

Further, despite notice of the infringement and repeated requests from Plaintiffs to exercise their control over the infringement and stop contributing to these unlawful acts, Unified Layer continues to host Twenty-Nine Palms' website, available at coachellacrossroads.com, which advertises live music events at COACHELLA CROSSROADS, including COACHELLA DAY ONE 22. Given Defendants' refusal to stop their unlawful behavior, Plaintiffs have been forced to file this action and the instant application to protect the COACHELLA trademarks and service marks from infringement and to protect the public from the confusion and false association caused by Twenty-Nine Palms and Defendants.

Immediate injunctive relief is necessary to stop this use prior to the start of COACHELLA DAY ONE 22, which is scheduled to take place December 31, 2021.[3]

## II.   STATEMENT OF FACTS

### A.   Plaintiffs' business and their trademark and service mark rights.

Held each year at the Empire Polo Club in Indio, California, COACHELLA is one of the most critically acclaimed music festivals in the world. Bernstein Decl. ¶ 3. The entire festival site, which includes the festival grounds, on-sight camping, parking and support

---

3 As discussed below, Plaintiffs have no objection to anyone holding an event, but they must do so using a name and mark that does not infringe the Coachella Marks.

TUCKER ELLIS LLP
Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

operations, encompass over 800 acres. *Id.* ¶ 4. Attendance to COACHELLA, aggregated over its two consecutive weekends, is estimated at nearly 750,000 attendees. *Id.* ¶ 5. According to the music industry publication *Pollstar*, COACHELLA has been the number one grossing music festival in the world every year it has been held since *Pollstar* began releasing festival grosses information in 2012 – with the exception of 2016, when COACHELLA fell to second place behind one of Plaintiff's other events. *Id.* ¶ 6, Ex. 1.

The first COACHELLA festival, held in October 1999, drew approximately 25,000 attendees into the California desert. *Id.* ¶ 7, Ex. 2. Over the years, COACHELLA's attendance and prominence have grown tremendously, as shown in screenshots of several online news stories about COACHELLA. *Id.* ¶ 8, Ex. 3.

COACHELLA mixes some of the most groundbreaking and world-famous musical artists with unique art installations from all over the world. The list of artists who have performed at COACHELLA include: Beastie Boys, Bjork, Coldplay, Daft Punk, Depeche Mode, Drake, Jane's Addiction, Jay-Z, Kanye West, Kendrick Lamar, Lady Gaga, Madonna, Nine Inch Nails, Oasis, Paul McCartney, Prince, Radiohead, Rage Against the Machine, Red Hot Chili Peppers, Roger Waters, The Cure, and Tool, to list only a very few. *Id.* ¶ 9, Ex. 4. COACHELLA also features many up and coming new artists. *Id.*

COACHELLA is carefully produced, curated, and controlled so as to provide a unique, one-of-a-kind, concert-going experience. *Id.* ¶ 10. COACHELLA is held for only two consecutive weekends to ensure a high-quality festival experience while balancing consumer demand. *Id.* ¶ 11. Because of this unique and limited experience, tickets to COACHELLA sell out, and for the past few years, have sold out in less than a day. *Id.* ¶ 12, Ex. 5.

COACHELLA is more than just about the music. COACHELLA features also include on-site camping facilities for some 15,000 attendees (complete with a karaoke lounge and a general store), and an amazing selection of food and beverages from a wide range of restaurants. *Id.* ¶ 13. COACHELLA also features a variety of art exhibits, including sculptures and "interactive" art. The art exhibits have included a virtual reality

TUCKER ELLIS LLP

Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

experience, short films, a silent disco, and other unique works. *Id.* ¶¶ 14, Exs. 6, 7. Taken together, the music, the food, the art, and the curation of these elements makes COACHELLA is more than just a concert—it truly is an experience. *Id.* ¶¶ 9-15.

Plaintiffs have also curated and created a world class online presence for COACHELLA, beginning with the festival's website, coachella.com. *Id.* ¶ 16, Ex. 8 (showing screen captures of website). This website received over 20 million page views in 2019, and hosted nearly 8.5 million users in over 12 million sessions. *Id.* ¶ 17. COACHELLA also has a mobile app for use on iPhone / iPad and Android devices. *Id.* ¶ 18, Ex. 9.

Plaintiffs extensively promote their COACHELLA festival through a variety of media, including on numerous Internet social media sites, including Facebook, Twitter, Instagram. The COACHELLA Facebook page has over 2.2 million likes; COACHELLA's Twitter account is being followed by over 955,000 consumers; and COACHELLA's Instagram account is being followed by over 1.9 million consumers. *Id.* ¶ 19, Ex. 10.

Plaintiffs have invested substantial sums in media and related content to promote COACHELLA. *Id.* ¶ 20. An Internet search using the Google search engine for "Coachella Music Festival" resulted in over 1 million hits. A cursory review of the results shows nearly every hit was related to COACHELLA, and the first search result was Plaintiffs' coachella.com website. *Id.* ¶ 21, Ex. 11. Tracked online media impressions (advertisements) for COACHELLA from March 29, 2019 through May 3, 2019 exceeded 130 million impressions. *Id.* ¶ 22. Over 500 credentialed journalists, from print media, radio, television, and the Internet reported live from the 2019 festival, including journalists form media outlets such as Time, Billboard, and the BBC, to list a few. *Id.* ¶ 23.

Due to their extensive and exclusive use for over twenty years, Plaintiffs own common law trademark and service mark rights for "COACHELLA" and "COACHELLA VALLEY MUSIC AND ARTS FESTIVAL," which Plaintiffs use in connection with a wide range of goods and services, including entertainment, namely, organizing and producing musical events. *Id.* ¶ 24. Plaintiffs also own numerous federal registrations for

its COACHELLA, COACHELLA (stylized), and COACHELLA VALLEY MUSIC AND ARTS FESTIVAL trade and service marks (collectively "COACHELLA Marks"). *Id.* ¶ 25. Specifically, Plaintiffs own: United States Reg. Nos. 3,196,119, 4,270,482, and 5,235,905 for COACHELLA; United States Reg. Nos. 3,196,129, 4,266,400, and 5,235,903 for COACHELLA (stylized); and United States Reg. Nos. 3,196,128, 3,965,563, 3,196,128, and 4,008,651 for COACHELLA VALLEY MUSIC AND ARTS FESTIVAL. *Id.* ¶ 25, Ex. 12. United States Reg. Nos. 3,196,119, 4,720,482, 3,196,129, 4,266,400, 3,196,128, and 4,008,651 are incontestable. *Id.*

Plaintiffs diligently protect the COACHELLA Marks from unauthorized use. *Id.* ¶ 26. Each year Plaintiffs send over 200 cease and desist letters and emails to unauthorized users. *Id.* Additionally, Plaintiffs have filed numerous Letters of Protests and oppositions with the United States Patent and Trademark Office. *Id.*

**B.     The Infringing Conduct**

**1.     Direct Infringement by Twenty-Nine Palms**

Twenty-Nine Palms owns and operates an outdoor venue using the name and mark COACHELLA CROSSROADS. The COACHELLA CROSSROADS venue is located in Coachella, California, approximately five miles from where Plaintiffs' COACHELLA festival is held annually. *Id.* ¶ 27.

On or around April 11, 2018, Twenty-Nine Palms filed an intent-to-use service mark application (the "Application") with the United States Patent and Trademark Office ("USPTO") seeking to register the mark COACHELLA CROSSROADS, which was assigned Serial No. 87/872,706. As filed, the Application covered "Providing facilities for sports and entertainment events; Providing recreational facilities" in Class 41 and "Providing hotel and campground facilities; Providing social meeting, banquet and social function facilities" in Class 43. *Id.* ¶ 28, Ex. 13.

The USPTO issued an Office Action against the Application citing a likelihood of confusion with Plaintiffs' COACHELLA Marks. *Id.* ¶ 29, Ex. 14. Accordingly, on or around October 23, 2018, Twenty-Nine Palms filed a Response to Office Action seeking

TUCKER ELLIS LLP

Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

to amend the services to cover "Providing sports facilities for sporting events, sports and athletic competitions" in Class 41, and deleting the services in Class 43. *Id.* ¶ 30, Ex.15.

The Application was published for opposition on December 11, 2018 and Plaintiffs timely filed an extension of time to oppose the Application on January 8, 2019. *Id.* ¶ 16, Exs. 16, 17. Plaintiffs and Twenty-Nine Palms entered into informal discussions during which Twenty-Nine Palms' counsel indicated that the venue would only be used for local community events, such as youth soccer and other small sporting events, and that any music or live entertainment would be incidental to those events (for example, local artists performing at the youth soccer game). Declaration of David Steele ("Steele Decl.") ¶ 3. Based on this information, Plaintiffs did not oppose the Application. *Id.*

Notwithstanding receiving notice from the USPTO and Plaintiffs that use of COACHELLA CROSSROADS as a mark for a venue for live music events and festivals would cause a likelihood of confusion Twenty-Nine Palms began using COACHELLA CROSSROADS as a mark in 2021 in connection with providing a venue for live music events and festivals. Bernstein Decl. ¶ 32, Ex. 18. Twenty-Nine Palms also began in 2021 advertising and promoting live music events taking place at COACHELLA CROSSROADS, including concerts featuring prominent country artists Toby Keith and Miranda Lambert, among others (some of which were ultimately canceled or postponed). *Id.* Toby Keith was the first music act to perform at COACHELLA CROSSROADS on May 15, 2021. *Id.*

Twenty-Nine Palms also registered and uses the domain name coachellacrossroads.com to advertise live music events at COACHELLA CROSSROADS, including the COACHELLA DAY ONE 22 festival. *Id.* ¶ 33, Ex. 19. The website available at that domain name contains no information or content about sports facilities for sporting events or about sports and athletic competitions. *Id.* The only information available on that website pertains to Twenty-Nine Palms' live music events and festivals. *Id.*

Plaintiffs recently discovered that Twenty-Nine Palms began promoting a live music event using the name and mark COACHELLA DAY ONE 22, scheduled to take place on

TUCKER ELLIS LLP

Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

-7-

December 31, 2021 at COACHELLA CROSSROADS. The COACHELLA DAY ONE 22 event features artists including Shaquille O'Neal (performing as DJ Diesel), Lil Wayne, E-40, and Getter. *Id.* ¶ 24, Ex. 20. Twenty-Nine Palms has gone to great lengths to imitate Plaintiffs and COACHELLA. To begin with, COACHELLA is well known for its prominent music artists, and consumers who enjoy live music attend COACHELLA. *Id.* ¶ 35. Twenty-Nine Palms is offering a directly competitive live music event and directly competes with Plaintiffs' fan base. Just as COACHELLA separates its festival into COACHELLA WEEKEND ONE and COACHELLA WEEKEND TWO, and similarly refers to individual days as DAY ONE, DAY TWO, and DAY THREE, Twenty-Nine Palms refers to its event as COACHELLA DAY ONE 22. *Id.* ¶ 36 Exs. 20, 21.

It is evident that Twenty-Nine Palms has intentionally named their event COACHELLA DAY ONE 22 to trade on the goodwill of the COACHELLA Marks, which are extensively used by Plaintiffs with the terms WEEKEND ONE, WEEKEND TWO, and DAY ONE, DAY TWO, and DAY THREE. This name and mark falsely suggests or implies that Twenty-Nine Palms' event is "day one" of Plaintiffs' festival season.

Twenty-Nine Palms has also copied Plaintiffs' distinctive advertising and marketing materials. Advertising for COACHELLA, including posters, flyers, and social media posts, features bold, bright colors, sunsets, palm trees, illustrations of the Coachella Valley, and the iconic Ferris wheel from the COACHELLA grounds. *Id.* ¶ 37, Ex. 22. As one of many examples of such advertising, the artwork for Plaintiffs' promotional film "Coachella: 20 Years in the Desert" features a Ferris wheel appearing behind a silhouette of the mountains of the Coachella Valley with palm trees in the foreground, all in orange, yellow, and pink sunset colors. *Id.* Likewise, other advertising announcing the lineups for COACHELLA festivals has used similar images of the mountains of Coachella Valley with palm trees in the foreground and skies showing fading colors such as purple, red, orange, and yellow gradients to mimic the sunset. *Id.* These images and design elements, particularly when used in combination, have become synonymous with COACHELLA over the years. *Id.*

Twenty-Nine Palms has adopted similar imagery for both COACHELLA

CROSSROADS and COACHELLA DAY ONE 22. For example, a COACHELLA CROSSROADS billboard near Plaintiffs' and Twenty-Nine Palms' venues shows a Ferris wheel with silhouettes of live performers all depicted in orange, yellow, and red sunset colors. *Id.* ¶ 38, Ex. 23. Moreover, the advertising for COACHELLA DAY ONE 22 on Twenty-Nine Palms' website uses purple and yellow skies reminiscent of a sunset, along with palm trees and the silhouette of the Coachella Valley in the background. *Id.*

In addition, press releases about COACHELLA DAY ONE 22 describe it as "part festival, part carnival, and part circus," while detailing the "aerial artists, live painters, live loopers, and stilt walkers" that will be performing during the live music event. *Id.* ¶ 39, Ex. 24. This mimics COACHELLA's own carefully curated festival experience featuring live music and art. *Id.* In addition, like COACHELLA, the grounds will have LED art installations and interactive environments using one of the same specialized vendors that Plaintiffs use at the COACHELLA festival. *Id.*

Adding to the infringement, on or around December 9, 2021, Live Nation and Twenty-Nine Palms began offering complimentary tickets to COACHELLA DAY ONE 22, which are listed on Ticketmaster's website and mobile devices as "Coachella Complimentary Offer." *Id.* ¶ 40, Ex. 25.

On October 28, 2021, Plaintiffs' counsel sent Twenty-Nine Palms' attorney a cease and desist letter regarding Plaintiffs' rights in the COACHELLA Marks and Twenty-Nine Palms' use of COACHELLA CROSSROADS and COACHELLA DAY ONE 22 in connection with live music and similar entertainment events. Steele Decl. ¶ 4, Ex. 1. Twenty-Nine Palms, however, continued to advertise and promote COACHELLA DAY ONE 22 and other events scheduled to take place at COACHELLA CROSSROADS. Despite numerous requests by Plaintiffs, Twenty-Nine Palms refuses to change the names of both COACHELLA DAY ONE 22 and COACHELLA CROSSROADS, and Twenty-Nine Palms refuses to adopt a new, non-infringing mark for its live music events and venue.

## 2.    Evidence of Actual Confusion

Here, despite the very short time that Twenty-Nine Palms has used of COACHELLA

TUCKER ELLIS LLP

Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

CROSSROADS and COACHELLA DAY ONE 22, there has already been at least one instance of actual confusion with Plaintiffs and their COACHELLA festival. For example, one professional ticket reseller, Ticketsmarter, offers for sale tickets for COACHELLA DAY ONE 22, and the event description specifically references Plaintiffs' COACHELLA festival, and provides a link to Ticketsmarter's webpage selling tickets for Plaintiffs' COACHELLA festival. The text for the ticket listing for COACHELLA DAY ONE 22 states, in pertinent part:

> "Attend the world's top music festival to see the biggest names in music all in one place when you get Coachella Day One 22' tickets. Music festivals have turned into a major industry generating millions of dollars worldwide. Festivals such as **Coachella** generate revenues of over $114 million annually."

Bernstein Decl. ¶41, Ex. 26 (emphasis added to show "Coachella" was hypertext linked). Moreover, Ticketsmarter's event description of Plaintiffs' Coachella Music Festival uses very similar language as used for COACHELLA DAY ONE 22, referring to both as "the world's top music festival" with "the biggest names in music." *Id.*

### 3.    Defendants' Contributory Infringement

Live Nation, through its ticketing platform Ticketmaster, advertises and sells tickets to COACHELLA DAY ONE 22 on ticketmaster.com as well as its mobile app, and lists COACHELLA CROSSROADS as a venue at which tickets are available for sale for live music and entertainment events. *Id.* ¶ 42, Ex. 27. Live Nation's advertisement depicted the event name, "Coachella Day One 22'" in block letters of identical size and typeface. *Id.* More recently, Live Nation began advertising and offering for sale a free ticket to the COACHELLA DAY ONE 22 event, which is described on ticketmaster.com as a "Coachella Complimentary Offer." *Id.* ¶ 40, Ex. 25.

On October 28, 2021, Plaintiffs' counsel sent Live Nation a cease and desist letter regarding Plaintiffs' rights in the COACHELLA Marks and advising that use of COACHELLA CROSSROADS and COACHELLA DAY ONE 22 infringed Plaintiffs' rights. Steele Decl. ¶5, Ex. 2.The letter further demanded that Live Nation immediately

cease all sales of tickets for the COACHELLA DAY ONE 22 event, and any other music festivals, live music performances or similar events at the COACHELLA CROSSROADS, and remove all use of COACHELLA from any advertising for the event or venue, including on its website. *Id.*

After receiving a cease and desist letter from Plaintiffs, Live Nation changed the listing for COACHELLA DAY ONE 22 on ticketmaster.com to read "DAY ONE 22" rather than "COACHELLA DAY ONE 22." Bernstein Decl. ¶¶ 42-43, Ex. 27. The event, however, continues to be advertised as COACHELLA DAY ONE 22 in certain Live Nation advertising and in other advertising associated with the event. *Id*.

Accordingly, on November 12, 2021, Plaintiffs' counsel sent a follow-up letter to Live Nation explaining the continued infringement of the COACHELLA Marks based on both the COACHELLA DAY ONE 22 event and the COACHELLA CROSSROADS venue. Steele Decl. ¶ 6, Ex. 3. Live Nation continues to advertise and sell tickets to COACHELLA DAY ONE 22 even after receipt of these letters. Bernstein Decl. ¶ 44.

As demonstrated by its response to Plaintiffs' first demand letter, Live Nation has direct control and monitoring of its ticketing platforms at ticketmaster.com and its mobile app, which it uses to sell tickets to the COACHELLA DAY ONE 22 event and to other events held at COACHELLA CROSSROADS. Live Nation has control over and the ability to monitor the infringement, including the ability to stop the infringement by ceasing all sales of tickets for COACHELLA DAY ONE 22 or other events at COACHELLA CROSSROADS and/or by stopping the dissemination of infringing advertising of COACHELLA DAY ONE 22 and other events at COACHELLA CROSSROADS.

Defendant Unified Layer hosts the website operated by Twenty-Nine Palms at coachellacrossroads.com. Steele Decl. ¶ 7, Ex. 4. The website is used solely to advertise and sell tickets to live music events at COACHELLA CROSSROADS, including COACHELLA DAY ONE 22. Bernstein Decl.¶ 45.

On November 8, 2021, Plaintiffs' counsel sent Unified Layer a cease and desist letter regarding Plaintiffs' rights in the COACHELLA Marks, and advising that use of

COACHELLA CROSSROADS and COACHELLA DAY ONE 22 infringed Plaintiffs' rights. Steele Decl. ¶8, Ex. 5.The letter further demanded that Unified Layer take immediate action by ceasing to host any content at coachellacrossroads.com, including but not limited to hosting content for the Coachella Crossroads venue, or any entertainment services. Unified Layer continues to host the website available at coachellacrossroads.com even after receipt of this letter. Bernstein Decl.¶ 46.

Unified Layer has direct control and monitoring of its website hosting services, including the hosting of the website at coachellacrossroads.com. Unified Layer has control over the infringement, including because it has the ability to stop the continued infringement by stopping the dissemination of infringing advertising of COACHELLA DAY ONE 22 and events at COACHELLA CROSSROADS on coachellacrossroads.com.

Despite having actual notice of and the ability to control and monitor the infringement, Defendants continue to infringe Plaintiffs' trademark rights. Defendants' statements and actions make clear that judicial relief is necessary to stop Defendants' continued infringement of the well-known COACHELLA Marks.

## III. PLAINTIFFS ARE ENTITLED TO A TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION UNDER 15 U.S.C. § 1116(a).

Plaintiffs seek injunctive relief to stop Defendants' continued infringement and contributory infringement of the well-known COACHELLA Marks. Plaintiffs face irreparable harm if Defendants are not ordered to stop violating Plaintiffs' rights. Rule 65 of the Federal Rules of Civil Procedure provides courts with the authority to issue temporary restraining orders and preliminary injunctions. Fed. R. Civ. P. 65(a)-(b). The purpose of a preliminary injunction is to preserve the status quo and the rights of the parties until a final judgment on the merits can be rendered. *McCormack v. Hiedeman*, 694 F.3d 1004, 1019 (9th Cir. 2012). The purpose of a temporary restraining order, on the other hand, is to preserve the status quo before a preliminary injunction hearing can be held. *Reno Air Racing Assoc., Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006) (explaining the purpose of a TRO is to preserve the status quo and prevent irreparable harm until a

TUCKER ELLIS LLP

Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

preliminary injunction hearing can take place).

The Lanham Act specifically provides for injunctive relief in trademark infringement actions. 15 U.S.C. § 1116(a) (the court has the "power to grant injunctions according to principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right" of the trademark owner). In the Ninth Circuit, a moving party is entitled a preliminary injunction if (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in its favor, and (4) an injunction is in the public interest. *Winter v. Natural Resources Defense Council*, 555 U.S. 7, 22 (2008); *Herb Reed Enters. v. Florida Entment. Mgmt.*, 736 F. 3d 1239, 1247 (9th Cir. 2013). Because an injunction is an equitable remedy, the court may apply a sliding test, under which "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Each of the *Winter* factors strongly favors the issuance of a temporary restraining order and a preliminary injunction.

### A.   Plaintiffs possess a strong likelihood of success on the merits of their contributory trademark infringement claims.

To obtain a preliminary injunction, a plaintiff must show that it is likely to prevail on the merits of its claims. *Wilson v. Watt,* 703 F.2d 395 (9th Cir. 1983). Here, Plaintiffs seek injunctive relief to stop Defendants' contributory infringement of Plaintiffs' federally-registered COACHELLA Marks, and based on evidence presented, the likelihood that Plaintiffs will prevail on the merits of their trademark infringement claim is extremely high.

Courts uniformly hold that, to prevail on a contributory trademark infringement claim, the plaintiff must first prove an underlying direct infringement by a third party. *See Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 897 (9th Cir. 2007). After a plaintiff establishes direct infringement, a defendant is liable for contributory trademark infringement if it supplies an infringing product or service to an infringer. *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 984 (9th Cir. 1999). The plaintiff must

TUCKER ELLIS LLP

Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

establish that the defendant "knew of acts of direct infringement and exercised the requisite level of control over the means of infringement." *Theta Chi Fraternity, Inc. v. Leland Stanford Junior Univ.*, 212 F. Supp. 3d 816, 825 (N.D. Cal. 2016).

**1.    Plaintiffs are likely to establish Twenty-Nine Palms' direct infringement of the COACHELLA Marks.**

To prevail on a claim of direct trademark infringement, Plaintiffs must prove they hold a protectable mark and that the alleged infringer's imitating mark is similar enough to "cause confusion, or to cause mistake, or deceive." *KP Permanent Make-Up, Inc. v. Lasting Impression, Inc.*, 543 U.S. 111, 117 (2004).

**a.    Defendants cannot contest the validity of Plaintiffs' COACHELLA Marks.**

Plaintiffs own trademark and service mark rights in their COACHELLA Marks, which Plaintiffs use in connection with a wide range of goods and services, including of importance here, "entertainment, namely, organizing and producing musical events." Bernstein Decl. ¶¶ 24-25, Ex. 12. Plaintiffs also own numerous federal registrations for their COACHELLA, COACHELLA (stylized), and COACHELLA VALLEY MUSIC AND ARTS FESTIVAL trade and service marks. *Id.*

Further, a certificate of registration constitutes "*prima facie* evidence of the validity of the trademark and of the facts stated in the certificate." 15 U.S.C. § 1057(b). As a result, Plaintiffs' registered trademarks are presumed valid, and Defendants bear the burden of proving invalidity. *See Filipino Yellow Pages, Inc. v. Asian Journal Publs., Inc.*, 198 F.3d 1143, 1146 (9th Cir. 1999). Moreover, United States Reg. Nos. 3,196,119, 4,720,482, 3,196,129, 4,266,400, 3,196,128, and 4,008,651 are incontestable as a matter of law. Bernstein Decl. ¶ 25, Ex. 12. These registrations and Plaintiffs' use of the COACHELLA Marks weigh in favor of granting Plaintiffs' request for injunctive relief.

**b.    Use of COACHELLA DAY ONE 22 and COACHELLA CROSSROADS is likely to cause confusion.**

To determine whether trademark use causes a likelihood of confusion, courts within

TUCKER ELLIS LLP

Cleveland ◆ Columbus ◆ Denver ◆ Los Angeles ◆ San Francisco

-14-

the Ninth Circuit apply the *Sleekcraft* factors. *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-349 (9th Cir. 1979); *see Brookfield Commns., Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1053 (9th Cir. 1999). In *Sleekcraft*, the Ninth Circuit provided a non-exhaustive list of factors relevant in "determining whether confusion between related goods or services is likely: (1) strength of the mark, (2) proximity or relatedness of the goods, (3) similarity of the marks, (4) evidence of actual confusion, (5) marketing channels used, (6) type of goods and the degree of care likely to be exercised by the purchaser, (7) defendant's intent in selecting the mark, and (8) likelihood of expansion of the product lines or services." *Sleekcraft*, 599 F.2d at 341. However, not all of the *Sleekcraft* factors have equal weight, and not every factor will be at issue in every case. *See Thane Int'l, Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 901 (9th Cir. 2002).

### (1)    Strength of the COACHELLA Marks

A strong mark is one that is likely to make a consumer think a product or service comes from a particular source. *See*, *e.g.*, *Official Airline Guides v. Goss*, 6 F.3d 1385, 1392 (9th Cir. 1993) ("the stronger a mark, the more likely it is that consumers will think that a product or service comes from a particular source"). To determine the strength, marks are placed within one of several categories, which are referred to, in increasing order of distinctiveness, as generic, descriptive, suggestive, arbitrary, or fanciful. *See*, *e.g*., *Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042, 1047 (9th Cir. 1998). Suggestive, arbitrary, and fanciful marks, "because their intrinsic nature serves to identify a particular source of a product, are deemed inherently distinctive and are entitled to protection." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992). Marks that are descriptive or suggestive "may be strengthened by such factors as extensive advertising, length of exclusive use, public recognition and uniqueness." *Accuride Int'l, Inc. v. Accuride Corp.*, 871 F.2d 1531, 1536 (9th Cir. 1989) (citation omitted).

Plaintiffs' COACHELLA Marks are descriptive of the geographic location where their music festival is held. However, as the Ninth Circuit explained in *Accuride,* due to extensive advertising, length of exclusive use, public recognition, and uniqueness,

TUCKER ELLIS LLP

Cleveland ◆ Columbus ◆ Denver ◆ Los Angeles ◆ San Francisco

Plaintiffs' well-known COACHELLA Marks are extremely strong. Plaintiffs have extensively advertised their uniquely designed and exclusive COACHELLA Marks for over 18 years, and spend substantial sums in advertising each year. Bernstein Decl. ¶ 20. Hundreds of thousands of attendees attend COACHELLA each year—2019's aggregated daily attendance was nearly 750,000—and millions of Internet users visit the Coachella.com website annually. *Id.* ¶¶ 5, 17, 22. The public overwhelmingly recognizes Plaintiffs' COACHELLA Marks, and closely associates the mark with Plaintiffs and COACHELLA. This factor strongly favors injunctive relief.

### (2)    Proximity or Relatedness of the Services

The services being offered by Twenty-Nine Palms in connection with COACHELLA CROSSROADS and COACHELLA DAY ONE 22 are identical and directly competitive with COACHELLA. As discussed above, Plaintiffs' service mark registrations recite "Entertainment, namely, organizing and producing musical events." Bernstein Decl. ¶ 24-25, Ex. 12. Just like Plaintiffs, Twenty-Nine Palms is operating and promoting live music events and a concert venue. Bernstein Decl. ¶ 27, 32, 34, Ex. 12. Moreover, as detailed above, Twenty-Nine Palms has gone to great lengths to copy Plaintiffs' COACHELLA festival, not only with its name and mark, but also by operating an event that combines live music with artistic acts and art displays, and even adopting similar advertising featuring bold colors reminiscent of the sunset and imagery of Plaintiffs' iconic Ferris wheel, palm trees, and the Coachella Valley. *Id.* ¶¶ 37-39 Exs. 22, 23, 24. This factor strongly favors a likelihood of confusion, weighing in favor of granting Plaintiffs' request for injunctive relief.

### (3)    Similarity of the Marks

In evaluating the similarity of the marks, "first, the marks must be considered in their entirety and as they appear in the marketplace; second, similarity is adjudged in terms of appearance, sound, and meaning; and third, similarities are weighed more heavily than differences." *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1206 (9th Cir. 2000). Each of Twenty-Nine Palms' designations is similar to Plaintiffs' COACHELLA Marks.

Starting with COACHELLA CROSSROADS, the mark incorporates Plaintiffs' COACHELLA Mark in its entirety, merely adding the descriptive term "CROSSROADS" to signify that the venue is at the intersection of two major highways. COACHELLA DAY ONE 22 similarly incorporates Plaintiffs' COACHELLA Mark in its entirety, merely adding the descriptive terms "DAY ONE 22" to describe the timing of the event. Notably, by adding this language, this mark copies Plaintiffs' use of DAY ONE, DAY TWO, and DAY THREE, along with WEEKEND ONE and WEEKEND TWO in connection with its COACHELLA festival, which falsely suggests that Twenty-Nine Palms' COACHELLA DAY ONE 22 is the first day of Plaintiffs' COACHELLA festival. Bernstein Decl. ¶ 36.

Regarding the meaning of all these marks, the similarity is all the more evident. The COACHELLA Marks convey two messages; first the mark identifies Plaintiffs' well-known COACHELLA music festival, and second the mark identifies the geographic location of the festival (namely in the Coachella Valley in Southern California). Twenty-Nine Palms' designations identify the same geographic location, the Coachella Valley, along with the specific location of the venue ("Crossroads") and a date ("Day One 22")—terms which, through Plaintiffs' efforts, are closely associated with Plaintiffs when used in combination with COACHELLA. This factor strongly favors finding a likelihood of confusion and weigh in favor of granting Plaintiffs' request for injunctive relief.

### (4)   Evidence of Actual Confusion

Although failure to show actual confusion is not dispositive, "[e]vidence that use of the two marks has already led to confusion is persuasive proof that future confusion is likely." *Sleekcraft*, 599 F.2d at 352.

Here, despite the very short time that Twenty-Nine Palms and Defendants have used the marks, there is already evidence of actual confusion. This factor tilts sharply in favor of Plaintiffs because one professional ticket reseller, TicketSmarter, appears to have been actually confused by Twenty-Nine Palms' use of COACHELLA DAY ONE 22. TicketSmarter offers for sale tickets for COACHELLA DAY ONE 22, and in the event description specifically references Plaintiffs' Coachella Music Festival, and provides a link

TUCKER ELLIS LLP

Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

to TicketSmarter's webpage selling tickets for Plaintiffs' Coachella Music Festival. The text for the ticket listing for COACHELLA DAY ONE 22 states, in pertinent part:

> "Attend the world's top music festival to see the biggest names in music all in one place when you get Coachella Day One 22' tickets. Music festivals have turned into a major industry generating millions of dollars worldwide. Festivals such as **Coachella** generate revenues of over $114 million annually."

Bernstein Decl. ¶41, Ex. 26 (emphasis added to show Coachella was hypertext linked). Moreover, TicketSmarter's event description of Plaintiffs' Coachella Music Festival uses very similar language as used for COACHELLA DAY ONE 22, referring to both as "the world's top music festival" with "the biggest names in music." *Id.*

### (5)   Marketing Channels Used

"Convergent marketing channels increase the likelihood of confusion. Therefore, the courts examine the proximity of the marketing channels to one another and whether direct competition exists." *Nutri/System, Inc. v. Con-Stan Industries, Inc.*, 809 F.2d 601, 606 (9th Cir. 1987). Plaintiffs, like Twenty-Nine Palms advertise extensively on the Internet and their website at coachella.com. Bernstein Decl. ¶¶ 16-19, 33, 36, 40 42, 45, Exs. 8-10, 19, 21, 25, 27.

Plaintiffs are still investigating Twenty-Nine Palms' advertising efforts; however, Twenty-Nine Palms is directly competing with Plaintiffs in the same geographic area and to generally the same consumers, using the Internet, including Facebook and Instagram, and other social media, as well as Twenty-Nine Palms' website. *Id.* It follows that Twenty-Nine Palms' marketing channels are not only convergent, but identical to those of Plaintiffs. This factor strongly favors finding a likelihood of confusion and weighs in favor of granting Plaintiffs' request for injunctive relief.

### (6)   Type of Goods & Degree of Care Likely Exercised by Purchaser

Plaintiffs and Twenty-Nine Palms produce music festivals and sell tickets to their respective events. *See, e.g.*, *id.* ¶ 3-10, 32, 34, Exs. 1-8, 19-20. Tickets to music festivals are not expensive or complex purchases where consumers are likely to exercise a great deal

TUCKER ELLIS LLP
Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

of care in distinguishing between trademarks when purchasing the goods. *See adidas-Am., Inc. v. Payless Shoesource, Inc.*, 546 F. Supp. 2d 1029, 1057-58 (D. Or. 2008). When purchasing inexpensive items, customers often exercise less care, thereby making confusion more likely. *Brookfield*, 174 F.3d at 1060. A general admission ticket to Twenty-Nine Palms' event is listed at $99—and Twenty-Nine Palms is currently even offering complimentary tickets to consumers. Bernstein Decl. ¶ 40, Ex. 25. These tickets are not the type of expensive items where consumers exercise a great deal of care in distinguishing between trademarks when purchasing. Consequently, this factor favors finding a likelihood of confusion and weighs in favor of granting Plaintiffs' request for injunctive relief.

### (7)    Intent in Selecting the Mark

Twenty-Nine Palms intended to trade on the goodwill of Plaintiffs' COACHELLA Marks and to confuse consumers into thinking that COACHELLA CROSSROADS and COACHELLA DAY ONE 22 are associated or affiliated with COACHELLA. "When an alleged infringer knowingly adopts a mark similar to another's, courts will presume an intent to deceive the public." *Official Airline Guides*, 6 F.3d at 1394; *see also Sleekcraft*, 599 F.2d at 354 ("When the alleged infringer knowingly adopts a mark similar to another's, reviewing courts presume that the defendant can accomplish his purpose: that is, that the public will be deceived").

Here, given a nearly infinite set of available names for their festival, Twenty-Nine Palms chose a name which is so similar to the well-known COACHELLA Marks that it incorporates some of the COACHELLA Marks in their entirety. In addition, Twenty-Nine Palms intentionally copied Plaintiffs' concept of "Coachella Weekend One" and "DAY ONE"—calling its event "Coachella Day One 22," which falsely suggests the event is part of COACHELLA or is otherwise associated with Plaintiffs or COACHELLA. Moreover, Twenty-Nine Palms began offering live music events at COACHELLA CROSSROADS and chose the name and mark COACHELLA DAY ONE 22 with actual knowledge of

TUCKER ELLIS LLP

Cleveland ◆ Columbus ◆ Denver ◆ Los Angeles ◆ San Francisco

Plaintiffs' rights with knowledge that this use would cause a likelihood of confusion.[4] Additionally, Defendants copied Plaintiffs' advertising and other indicia of the COACHELLA festival in its own advertising for a competitive festival. Bernstein Decl. ¶¶ Exs. 22, 23. There is no other reason for these acts other than to intentionally trade on the goodwill of the COACHELLA Marks. This factor therefore also strongly favors finding a likelihood of confusion and granting injunctive relief.

### (8)    Likelihood of Expansion of the Product Lines or Services

The "likelihood of expansion" factor requires a consideration of "whether existence of the allegedly infringing mark is hindering the plaintiff's expansion plans." *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 634 (9th Cir. 2005). Plaintiffs and Twenty-Nine Palms offer directly competing services. Bernstein Decl. ¶¶ 3-10, 32-34. Therefore, any likelihood of expansion of the product lines or services, would be the same for both Plaintiffs and Twenty-Nine Palms. This factor strongly favors a likelihood of confusion.

In conclusion, Plaintiffs have demonstrated an extremely high likelihood of success on the merits of its direct trademark infringement claim. Twenty-Nine Palms intentionally adopted Plaintiffs' valid, enforceable and well-known COACHELLA Marks and are currently using those marks to provide directly competing services. Defendants cannot seriously dispute the high likelihood of confusion. Once again, this weighs in favor of granting Plaintiff's request for injunctive relief.

### 2.    Defendants are also Contributorily Liable for Infringement.

Once a Plaintiff has established the direct infringement, contributory liability for trademark infringement arises when a defendant supplies an infringing product or service to an infringer depending on the extent of control exercised by the defendant over the third party's means of infringement. *Lockheed Martin*, 194 F.3d at 984. A plaintiff must establish that the defendant "knew of acts of direct infringement and exercised the requisite

---

[4] As discussed above, the USPTO's Office Action **refused registration** of COACHELLA CROSSROADS for **music and live entertainment** because of **a likelihood of confusion** with Plaintiffs' Coachella Marks.

level of control over the means of infringement." *Theta Chi*, 212 F. Supp. 3d at 825.

Here, Defendants both knew of the acts of infringement and exercise direct control over the means of infringement. Live Nation and Unified Layer were given actual notice of the direct infringement by Twenty-Nine Palms through cease-and-desist letters sent by Plaintiffs' counsel. *See* Steele Decl. ¶¶ 5-6, 8, Exs. 2-3, 5. Notably, Live Nation even elected to change the event listing for COACHELLA DAY ONE 22 in response to Plaintiffs' letter, removing certain (but not all) references to "COACHELLA.", demonstrating its control.

Moreover, each of the Defendants has control over the means of infringement. Live Nation has control over, and the ability to monitor, the means of the infringement (i.e., the sale of tickets), and has the ability to stop the infringement by ceasing ticket sales for COACHELLA DAY ONE 22 or other events at COACHELLA CROSSROADS and/or by stopping the dissemination of infringing advertising of the infringing event and venue. Live Nation's ability to control the infringement is even evidenced by its decision to change some (but not all) references to COACHELLA on the COACHELLA DAY ONE 22 event listing.

Unified Layer also has control over, and the ability to monitor, the means of infringement because it has the ability to stop the dissemination of infringing advertising of COACHELLA DAY ONE 22 and events at COACHELLA CROSSROADS on coachellacrossroads.com. *See Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 658 F.3d 936, 942-43 (9th Cir. 2011) (affirming a judgment against a web hosting company in part because it controlled the infringement by having the "master-switch" that kept infringing websites online).

Accordingly, Plaintiffs are likely to succeed on their contributory liability claims.

**B.     Plaintiffs will suffer irreparable harm if an injunction is not issued.**

Because Plaintiffs have shown a likelihood of success on the merits, they are entitled to a rebuttable presumption of irreparable injury. 15 U.S.C. § 1116(a) ("A plaintiff seeking any such injunction [for infringement] shall be entitled to a rebuttable presumption of

irreparable harm upon . . . a finding of likelihood of success on the merits for a violation identified in this subsection in the case of a motion for a preliminary injunction or temporary restraining order"). Even absent this presumption, the COACHELLA DAY ONE 22 event is scheduled to take place at the end of December, thus rendering the threatened damage to Plaintiffs' goodwill both imminent and probable.

Moreover, the quintessential harm resulting from Defendants' contributory infringement of the COACHELLA Marks is that Plaintiffs are robbed of its exclusive control over the use of their marks and their reputation for superior quality. *See Herb Reed Enters., LLC v. Florida Entm't Mgmt, Inc.,* 736 F. 3d 1239, 1247 (9th Cir. 2013); *Adidas Am., Inc. v. Skechers USA, Inc.,* 2016 WL 591760, at *17 (D. Or. Feb. 12, 2016) (holding that when Plaintiffs lose "control over [their] trademarks, reputation and goodwill – a quintessentially irreparable injury" occurs"). Plaintiffs have provided evidence that they are currently suffering irreparable harm that will continue if Defendants are permitted to continue using COACHELLA DAY ONE 22, COACHELLA CROSSROADS, or any similar designation, to promote Twenty-Nine Palms' live music event and concert venue. For example, Plaintiffs have made a substantial investment of money and time in advertising the COACHELLA Marks through a variety of media, including numerous social media sites. Bernstein Decl. ¶¶ 16-20. In addition, Plaintiffs work extremely hard to produce, curate, and control every aspect of COACHELLA, from selecting the performers, the quality of the venue, refreshments offered, etc. *Id.* ¶¶ 10-15. The purpose of this advertising, curation, and control is to build and maintain reputation among consumers that COACHELLA is a unique, one of a kind festival experience. *Id.*

Twenty-Nine Palms and Defendants are trading off of Plaintiffs' efforts by copying or closely imitating the COACHELLA Marks and using Plaintiffs' festival as a template for their own. One reason that COACHELLA is so successful is because it is a carefully curated, high quality, and unique event that, in connection with an impressive concert-going experience, creates a high demand. *Id.* By using designations that trade off of the goodwill of the COACHELLA Marks, Twenty-Nine Palms, along with the contributory

TUCKER ELLIS LLP

Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

acts of Defendants, are weakening those marks' ability to act as unique source identifiers for Plaintiffs' high-quality festival. If Defendants—and others like them—are allowed to continue using COACHELLA and similar designations, the public will no longer be assured that events incorporating those marks come from a single source (namely, Plaintiffs), and the public will no longer be assured that the events are of the high quality for which COACHELLA is known. Once this happens, it will be too late for Plaintiffs to do anything as no amount of money can change the public's perception.

Accordingly, this prong favors the entry of a temporary restraining order.

**C.    The balance of equities tilts in favor of granting injunctive relief.**

In balancing the equities, **Defendants will not be harmed by granting Plaintiffs' request for an injunction. Twenty-Nine Palms' event can still take place as scheduled. It will simply be required to change the name of the event and venue, and modify the marketing**. Accordingly, Defendants could continue to provide their services to Twenty-Nine Palms. In contrast, Plaintiffs' reputation and trademarks are being irreparably harmed every day by Defendants' actions. Unless Defendants are enjoined from using COACHELLA DAY ONE 22, COACHELLA CROSSROADS, and related marks and domain names, Twenty-Nine Palms and Defendants will continue to trade off of the goodwill associated with Plaintiffs' well-known COACHELLA Marks.

On the other hand, granting Plaintiffs' request for an injunction will only prevent Defendants from continuing to profit from their unlawful behavior, which is not a cognizable "hardship" that the Court should consider. Moreover, if the Court issues an injunction, Plaintiffs may be required to post a bond that will compensate Defendants for any possible monetary harm they might suffer if the injunction later is deemed improper. *See* Fed. R. Civ. P. 65(c).[5] Defendants will suffer no actual harm if the injunction issues.

_____

5 The bond, if required at all, should be *de minimis*. The proponent of a bond should provide "hard evidence" of any alleged monetary harm. *See* Cal. Prac. Guide Fed. Civ. Pro. Before Trial Ch. 13-D, ¶ 13:211 (Apr. 2021 Update). Here, the requested order will not shutter Defendants' business, nor even prevent them from hosting a single event. Instead, they will simply be required to change their name to one that is not likely to cause consumer

The balance of hardships tips strongly in Plaintiffs' favor.

**D.    Granting the injunction is in the public interest.**

There is strong public interest in preventing consumer confusion, which favors issuance of the requested injunctive relief. "Public interest can be defined a number of ways, but in a trademark case, it is most often a synonym for the right of the public not to be deceived or confused." *Opticians Ass'n of Am. v. Independent Opticians of Am.*, 920 F.2d 187, 197 (3d Cir. 1990); *see also Internet Specialties West, Inc. v. Milon-Digiorgio Enters.*, 559 F.3d 985, 993-94 (9th Cir. 2009) (affirming injunction and stating: "[t]he wording of the district court's injunction reflects the usual public interest concern in trademark cases: avoiding confusion to consumers"). Thus, once a likelihood of confusion is shown, it follows that the public interest is damaged if such confusion continues. *Opticians Ass'n of Am.*, 920 F.2d at 198; *see also Power Balance LLC v. Power Force LLC,* 2010 WL 5174957, at *7 (C.D. Cal. Dec. 14, 2010) ("In trademark cases, this factor is often addressed in terms of the public's right not to be deceived or confused.").

Since Plaintiffs have shown a likelihood of confusion—and in fact actual confusion is already present after a short time in the marketplace—this factor has been met and weighs in favor of granting Plaintiffs' request for injunctive relief.

**E.    Plaintiffs did not delay in seeking relief.**

Plaintiffs anticipate that Defendants will argue a lack of the requisite exigency for a TRO because Plaintiffs purportedly delayed in seeking relief after having been aware of COACHELLA CROSSROADS since around January 2019, when Plaintiffs requested an extension of time from the USPTO to oppose Twenty-Nine Palms' Application. However, as explained above, Plaintiffs have been diligent and promptly contacted Twenty-Nine Palms when they learned of its potential plans to use COACHELLA CROSSROADS as an entertainment venue, and in response were assured that the venue would be used for youth

confusion or an association with Plaintiffs. Most, if not all of Defendants' promotional materials are online, so the cost to change those materials would be de minimis. As a result, no bond should be required.

-24-

sports and related activities, an assertion supported by Twenty-Nine Palms' amendment to its Application. As a result, Plaintiffs were surprised when Toby Keith performed at the venue in 2021. Once Plaintiffs became aware that Twenty-Nine Palms intended to host musical events, Plaintiffs promptly contacted Twenty-Nine Palms and demanded that it cease its infringing activity. When Plaintiffs learned of COACHELLA DAY ONE, Plaintiffs' counsel timely sent a cease and desist letter demanding Twenty-Nine Palms change the name and stop the infringing use.

Plaintiffs counsel received a response that Twenty-Nine Palms was investigating the issue, and then, a few weeks later, Twenty-Nine Palms sent a letter through its attorneys stating it would not cease its unlawful conduct and that it was immune from suit. Further, Twenty-Nine Palms also asserted that none of the Defendants could be sued for contributory infringement because Twenty-Nine Palms must be joined in any such suit as an indispensable party. Plaintiffs researched the legal issues raised in this letter as quickly as possible so as to avoid consuming court resources and, upon concluding that Defendants were subject to suit, and that Twenty-Nine Palms was not an indispensable party.[6]

## IV.    CONCLUSION

For all of the above reasons, Plaintiffs respectfully request the Court grant Plaintiffs' request for a temporary restraining and order and preliminary injunction barring the use of COACHELLA CROSSROADS, COACHELLA DAY ONE 22, or any similar designation.

---

[6] *See Coach, Inc. v. Celco Customs Services Co.*, 2013 WL 12122691, at *12 (E.D.N.Y. Sept. 30, 2019) ("Courts have long held that in patent, trademark, literary property, and copyright infringement cases, any member of the distribution chain can be sued as an alleged joint tortfeasor. … [plaintiffs] may sue as many or as few of the alleged wrongdoers as he chooses; those left out of the lawsuit are not indispensable parties"); *Lockheed Martin Corp. v. Network Solutions, Inc.*, No. CV 96–7438 DDP (ANx), 1997 WL 381967, *3 (C.D. Cal. Mar. 19, 1997) (internal alteration marks omitted) (citing *Costello Publishing Co. v. Rotelle*, 670 F.2d 1035, 1043 (D.C. Cir. 1981) ("[I]t is well established that a suit for infringement is analogous to other tort actions and infringers are jointly and severally liable; hence plaintiff need only sue participants as it sees fit."); *see also Temple v. Synthes Corp.*, 498 U.S. 5, 7 (1990) ("The Advisory Committee Notes to Rule 19(a) explicitly state that 'a tortfeasor with the usual "joint-and-several" liability is merely a permissive party to an action against another with like liability.'")

1 | Respectfully submitted,

2 | Dated: December 13, 2021                    Tucker Ellis LLP

3 |                                          By: /s/David J. Steele

4 |                                              David J. Steele
                                                 Howard A. Kroll
5 |                                              Steven E. Lauridsen
                                                 Janie L. Thompson

6 |                                              Attorneys for Plaintiffs
                                                 Coachella Music Festival, LLC
7 |                                              Goldenvoice, LLC

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28