KILPATRICK TOWNSEND & STOCKTON LLP
Christopher T. Varas (State Bar No. 257080)
CVaras@kilpatricktownsend.com
Larry W. McFarland (State Bar No. 129668)
LMcFarland@kilpatricktownsend.com
1801 Century Park East, Suite 2300
Los Angeles, CA 90067
Telephone:   310-248-3830
Facsimile:    310-860-0363

Attorneys for Defendant Live Nation Entertainment, Inc.

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| COACHELLA MUSIC FESTIVAL, LLC ET AL,<br><br>Plaintiff,<br><br>v.<br><br>LIVE NATION ENTERTAINMENT, INC. ET AL,<br><br>Defendants. | Civil Action No. 2:21-cv-09631-RGK-GJS<br><br>**OPPOSITION OF DEFENDANT LIVE NATION ENTERTAINMENT, INC. TO EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE**<br><br>Date:    TBD<br>Time:    TBD<br>Ctrm.:   850, 8th Floor<br>Judge:   Hon. Judge R. Gary Klausner |

## **Table of Contents**

I. INTRODUCTION ..................................................................................... 1

II. ALLEGATIONS OF THE COMPLAINT ............................................... 2

III. ARGUMENT ............................................................................................ 4

    A. This Court Should Not Grant Injunctive Relief on Those Claims Because Plaintiffs' Claims Are Against the Tribe, a Required Party That Cannot Be Joined ........................................................................................ 4

    B. Plaintiffs Cannot Establish Their Claims of Contributory Infringement ............................................................ 9

    C. Plaintiffs Have Not Otherwise Met the Standard for a Temporary Restraining Order ........................................... 12

IV. CONCLUSION ...................................................................................... 14

# Table of Authorities

**Cases**

*adidas Am., Inc. v. Skechers USA, Inc.*,
  890 F.3d 747 (9th Cir. 2018) .................................................................................. 13

*American Greyhound Racing, Inc. v. Hull*,
  305 F.3d 1015 (9th Cir. 2003) ........................................................................... 6, 7, 8

*Burcham v. City of Los Angeles*,
  No. 2:21-cv-07296-RGK-JPR, 2021 WL 5049099 (C.D. Cal. Oct. 27, 2021) ...... 12

*Clark Material Handling Co. v. Zoomlion Heavy Indus. Sci. & Tech. Co.*,
  No. 18-CV-5853-CBM-E, 2018 WL 6252463 (C.D. Cal. Oct. 11, 2018) ............. 13

*Coach, Inc. v. Citi Trends, Inc.*,
  Case No. CV 17-4775 DMG (KSx), 2019 WL 6354367 (C.D. Cal. Oct. 23, 2019) 11

*Confederated Tribes v. Lujan*,
  928 F.2d 1496 (9th Cir. 1991) .................................................................................. 9

*Cook v. AVI Casino Enterprises, Inc.*,
  548 F.3d 718 (9th Cir. 2008) .................................................................................... 7

*Cook v. AVI Casino Enterprises, Inc.*,
  556 U.S. 1221 (2009) ............................................................................................... 7

*Dawavendewa v. Salt River Project*,
  276 F.3d 1150 (9th Cir. 2002) .......................................................................... 7, 8, 9

*Dawavendewa v. Salt River Project*,
  537 U.S. 820 (2002) ................................................................................................. 7

*Friends of Amador County v. Salazar*,
  554 Fed. Appx. 562 (9th Cir. 2014) ..................................................................... 5, 6

*Friends of Amador County v. Salazar*,
  574 U.S. 1027 (2014) ............................................................................................... 5

*Herb Reed Enterprises, LLC v. Florida Entertainment Management, Inc.*,
  574 U.S. 815 (2014) ............................................................................................... 12

*Herb Reed Enterprises, LLC v. Florida Entertainment Management, Inc.*,
  736 F.3d 1239 (9th Cir. 2013) ............................................................................... 12

*Imperial Granite Co. v. Pala Band of Mission Indians*,
    940 F.2d 1269 (9th Cir. 1991) ................................................................. 6

*Kiowa Tribe of Okla. v. Manufacturing Technologies, Inc.*,
    523 U.S. 751 (1998) ................................................................................ 7

*Lockheed Martin Corp. v. Network Solutions, Inc.*,
    194 F.3d 980 (9th Cir. 1999) ................................................................ 10

*Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*,
    658 F.3d 936 (9th Cir. 2011) ................................................................ 10

*Makah Indian Tribe v. Verity*,
    910 F.2d 555 (9th Cir. 1990) .................................................................. 8

*Mission Power Eng'g Co. v. Cont'l Cas. Co.*,
    883 F. Supp. 488 (C.D. Cal. 1995) ................................................. 11, 14

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
    494 F.3d 788 (9th Cir. 2007) .......................................................... 10, 11

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
    553 U.S. 1079 (2008) ............................................................................ 10

*Petroliam Nasional Berhad v. GoDaddy.com, Inc.*,
    574 U.S. 815 (2014) ....................................................................... 10, 12

*Petroliam Nasional Berhad v. GoDaddy.com, Inc.*,
    737 F.3d 546 (9th Cir. 2013) ................................................................ 10

*Petroliam Nasional Berhad v. GoDaddy.com, Inc.*,
    897 F. Supp. 2d 856 (N.D. Cal. 2012) .................................................. 10

*Quileute Indian Tribe v. Babbitt*,
    18 F.3d 1456 (9th Cir. 1994) .................................................................. 9

*Santa Clara Pueblo v. Martinez*,
    436 U.S. 49 (1978) .................................................................................. 7

*Save the Valley, LLC v. Santa Ynez Band of Chumash Indians*,
    No. CV1502463RGKMANX, 2015 WL 12552060 (C.D. Cal. July 2, 2015) ......... 4

*Three Affiliated Tribes of the Ft. Berthold Reservation v. Wold Eng'g*,
    476 U.S. 877 (1986) ................................................................................ 7

*Turley v. Eddy*,
    540 U.S. 1178 (2004) .................................................................................. 6

*Turley v. Eddy*,
    70 Fed. Appx. 934 (9th Cir. 2003) ........................................................ 6, 8

*Zamfir v. Casperlabs, LLC*,
    528 F. Supp. 3d 1136 (S.D. Cal. 2021) .................................................. 12

**Other Authorities**

*McCarthy on Trademarks and Unfair Competition* § 25:17 (5th ed.) ........................ 10

**Rules**

Fed. R. Civ. P. 19(a)(1) ................................................................................. 5

Fed. R. Civ. P. 19(b) ..................................................................................... 5

**Regulations**

15 U.S.C. § 1116(a) ..................................................................................... 12

## I. INTRODUCTION

Plaintiffs' emergency request for a temporary restraining order against Live Nation Entertainment, Inc. is the definition of an abusive ex parte application. Plaintiffs concede the substance of their infringement claim should be litigated against the Twenty-Nine Palms Band of Mission Indians (the "Tribe"), a sovereign tribe that is not a party to this lawsuit. They concede their complex, highly factual dispute with the Tribe over who has what right to use the name of the Coachella Valley where the Tribe has long resided has been ongoing for years. They concede the relevant facts include multiple direct discussions between Plaintiffs and the Tribe long before this dispute arose, some of which Plaintiffs unilaterally characterize in the papers they filed against Live Nation less than forty-eight hours ago. They concede the dispute over the upcoming New Year's event at the Tribe's Coachella Crossroads venue arose as early as October and that they have known for weeks that the Tribe would not comply with their demands.

Notwithstanding (or perhaps because of) these facts, Plaintiffs have forced the Court and Live Nation – a third party whose only alleged wrongdoing is selling tickets to the Tribe's upcoming event through its subsidiary Ticketmaster, LLC[1] – to drop everything and attempt to litigate Plaintiffs' highly factual dispute with the Tribe by proxy in a matter of days. The timing of this application was no accident. Plaintiffs deliberately filed this application in the hope that the Court would shut down ticket sales with an unappealable restraining order almost exactly fourteen days before the Tribe's New Year's event is scheduled to occur, rendering the more fulsome preliminary injunction motion moot and using an emergency court order against service providers to maximize the damaging impact on a sovereign entity

---

[1] Plaintiffs are fully aware that Live Nation Entertainment, Inc. does not conduct ticketing operations. To avoid confusion Live Nation Entertainment, Inc. refers to itself as Live Nation in this brief, but reserves the right to correct the case caption if this lawsuit continues after the Court rules on the Ex Parte Application.

that has declined to waive its sovereign immunity. The Court should not countenance Plaintiffs' abusive tactics.

The Court should deny the Ex Parte Application for three independent reasons: 1) the Tribe is an indispensable party without whom the Court cannot adjudicate the secondary claims purportedly asserted against the Tribe's ticketing agent Live Nation; 2) Plaintiffs' allegations and the facts asserted in their moving papers preclude the Court from finding that Plaintiffs are likely to prevail on secondary infringement claims against Live Nation; and 3) Plaintiffs have not otherwise met the standard for a restraining order, including because granting emergency relief against Live Nation would be inequitable and contravene the public interest.

## II. ALLEGATIONS OF THE COMPLAINT

Plaintiffs concede they cannot sue the Tribe for alleged infringement, so they have styled their Complaint as one for contributory infringement against the Tribe's service providers, namely the Tribe's ticketing agent and the company that hosts the Tribe's website. The Complaint (Dkt. 1) and memorandum in support of Plaintiffs' Ex Parte Application (Dkt. 9) leave no doubt that Plaintiffs are attempting to litigate against the Tribe by proxy. Indeed, Plaintiffs talk more about the Tribe in their pleadings than they do Live Nation. Of particular note, Plaintiffs allege that:

- The Tribe operates a venue called Coachella Crossroads, located in Coachella, California. (Dkt. 1, ¶¶ 54-55.)
- The Tribe applied to register the trademark COACHELLA CROSSROADS in 2018 – without any opposition from Plaintiffs. (*Id*. ¶¶ 56-60.)
- The Tribe has offered live music events at Coachella Crossroads since May 2021. (*Id*. ¶¶ 61-62.)
- The Tribe owns and uses the domain name coachellacrossroads.com. (*Id*. ¶¶ 63-65.)

- The Tribe is using Live Nation's ticketing service to sell tickets to the Tribe's upcoming New Year's "Day One 22" event, to be held at the Tribe's Coachella Crossroads venue in the Tribe's ancestral home in the Coachella River Valley.
- The Tribe is responsible for the allegedly infringing advertising, imagery, and social media posts around the event. (*Id.* ¶¶ 66-73.)
- The Tribe has offered complimentary tickets to the event under the listing "Coachella Complimentary Offer." (*Id.* ¶ 74.)

*See also generally* Dkt. 9 at 6-9 ("Direct Infringement by Twenty-Nine Palms").

Plaintiffs concede in their papers that they cannot name the Tribe as a defendant in this action or seek emergency relief directly against the Tribe. As discussed more fully below, and as Plaintiffs are well aware, the Tribe operates under a grant of sovereign immunity and cannot be sued for trademark infringement. (Dkt. 1 at 2 n.1; Dkt. 9 at 1 n.1.)

Lacking a remedy against the Tribe, Plaintiffs have now haled its service providers into Court as nominal defendants in an emergency proceeding to choke off the Tribe's access to services two weeks before its New Year's event. The only meaningful conduct by Live Nation alleged in the Complaint is that Live Nation lists and sells tickets to the Tribe's event and identifies Coachella Crossroads as the venue where the event will occur.[2] (Dkt. 1, ¶ 85; Dkt. 9 at 10.) Based on these threadbare allegations, Plaintiffs allege that Live Nation has "control over the infringement, including without limitation the ability to stop the infringement" by ceasing ticket sales "and/or by stopping the dissemination of infringing advertising." (*Id.*, ¶ 93.) Plaintiffs do not, however, allege that Live Nation controls the substantive advertising and marketing for the Tribe's allegedly infringing event, nor

---

[2] Live Nation disputes that ticket listings for the New Year's event comprise advertising, but the Court need not resolve that issue because Plaintiff has failed to satisfy the requirements for an emergency restraining order either way for the reasons discussed in the next section.

that an injunction against the Tribe's service providers would prevent the event from going forward. Plaintiffs also do not allege any facts to support the conclusory statement that Live Nation has "control over the infringement."

### III. ARGUMENT

#### A. This Court Should Not Grant Injunctive Relief on Those Claims Because Plaintiffs' Claims Are Against the Tribe, a Required Party That Cannot Be Joined

As is clear from the summary of Plaintiffs' allegations above, the real party in interest here is the Tribe. Plaintiffs allege the Tribe is infringing their trademark rights through its use of the COACHELLA CROSSROADS trademark and other uses of the word Coachella in connection with the Tribe's upcoming New Year's event. Plaintiffs spend most of their Ex Parte Application arguing that they are likely to establish the Tribe's alleged infringement of their trademarks, relegating the Tribe's sovereign immunity and absence from this lawsuit to a footnote (Dkt. 9 at 1, n.1) and skipping straight to a lengthy discussion of the factually intensive *Sleekcraft* factors, including unilateral characterizations of discussions Plaintiffs have purportedly had directly with the Tribe over the course of years. (Dkt. 9 at 6-9, 14-20.) For example, Plaintiffs contend that the Tribe "has gone to great lengths to copy Plaintiffs' COACHELLA festival," that the Tribe "is directly competing with Plaintiffs in the same geographic area and to generally the same consumers," and that the Tribe "intended to trade on the goodwill of Plaintiffs' COACHELLA Marks and to confuse consumers." (Dkt. 9 at 14-20.)

Plaintiffs concede they cannot bring their purported claims against the Tribe. That concession is fatal to their Ex Parte Application, and will ultimately prove fatal to their claims against Live Nation. Simply put, Plaintiffs cannot sue Live Nation to end run the Tribe's immunity. *See Save the Valley, LLC v. Santa Ynez Band of Chumash Indians*, No. CV 15-02463-RGK (MANx), 2015 WL 12552060, at *4 (C.D. Cal. July 2, 2015) ("[T]ribal immunity precludes claims where the real, substantial party in interest is actually the tribe, and [other parties] are merely

attached as nominal defendants in an attempt to circumvent tribal immunity.") (internal quotations omitted).

Under Federal Rule of Civil Procedure 19, this action will not be able to proceed. As the Ninth Circuit has explained, "Rule 19 sets the framework for determining whether a party is required and indispensable." *Friends of Amador County v. Salazar*, 554 Fed. Appx. 562, 564 (9th Cir. 2014), *cert. denied*, 574 U.S. 1027 (2014). The Court decides first whether the Tribe is a required party "that should normally be joined pursuant to Rule 19(a)(1)." If so, the Court then asks whether joinder is feasible under Rule 19(b). If joinder is not feasible, the Court must determine whether the action should proceed in the Tribe's absence, considering the potential prejudice to the Tribe, the extent to which any prejudice could be mitigated, whether a judgment rendered in the Tribe's absence would be adequate, and whether Plaintiffs would have an adequate remedy if the action were dismissed. Fed. R. Civ. P. 19(b); *see Friends of Amador County*, 554 Fed. Appx. at 564.

Under this analysis, and as the Ninth Circuit has not hesitated to hold in comparable circumstances, this action will be subject to dismissal. Rule 19(a) requires joinder of a person if, "in that person's absence, the court cannot accord complete relief among existing parties" or if the person claims an interest relating to the subject of the action and disposing of the action in that person's absence might impair that person's ability to protect the interest or leave an existing party subject to a substantial risk of inconsistent obligations. Fed. R. Civ. P. 19(a)(1). Here, Plaintiffs' own allegations, arguments and the exhibits to their Ex Parte Application establish beyond any doubt that the Tribe is a necessary party to this action. Based on Plaintiffs' allegations, the Tribe has legally protected interests that are related to the subject of the action, including at least the following:

- the Tribe owns the COACHELLA CROSSROADS trademark, of which the Complaint and Ex Parte Application seek to preclude use;

- the Tribe owns and operates the Coachella Crossroads venue, which offers live events that the Tribe promotes under the COACHELLA CROSSROADS mark and other references to the Tribe's ancestral homeland in the Coachella valley; and
- the Tribe uses the coachellacrossroads.com domain and social media accounts that Plaintiffs seek to block.

Proceeding with this action in the Tribe's absence would necessarily impair the Tribe's ability to protect those interests. *See, e.g., Friends of Amador County*, 554 Fed. Appx. at 564 (Indian tribe was a required party because it had several legally protected interests in action challenging the Tribe's gaming compact with California); *American Greyhound Racing, Inc. v. Hull*, 305 F.3d 1015, 1023 (9th Cir. 2003) (Indian tribes were required parties in action involving gaming compacts where they had an interest and "are so situated that this litigation *as a practical matter* impairs or impedes their ability to protect it") (emphasis in original); *Turley v. Eddy*, 70 Fed. Appx. 934, 935 (9th Cir. 2003), *cert. denied*, 540 U.S. 1178 (2004) (Indian tribes were necessary parties to lawsuit by occupants challenging their eviction from tribal lands, because they claimed an interest in the land and their interest would be impaired by the lawsuit).

Under the second step of the analysis, joinder of the Tribe is not feasible. The Tribe is not subject to suit because of its sovereign immunity. The doctrine of sovereign immunity establishes that a sovereign entity – including a sovereign Indian tribe – is not subject to this Court's jurisdiction unless it has consented to be sued. *Save the Valley,* 2015 WL 12552060, at *2 (citations omitted). The Ninth Circuit has stated it is "absolutely clear" that Indian tribes such as the Tribe are immune from suit, including suits for declaratory and injunctive relief. *Imperial Granite Co. v. Pala Band of Mission Indians*, 940 F.2d 1269, 1271 (9th Cir. 1991). Tribal sovereign immunity "is a necessary corollary to Indian sovereignty and self-governance." *Three Affiliated Tribes of the Ft. Berthold Reservation v. Wold Eng'g,*

476 U.S. 877, 890 (1986). It shields Indian tribes from suit absent express authorization by Congress or clear waiver by the tribe. *Kiowa Tribe of Okla. v. Manufacturing Technologies, Inc.*, 523 U.S. 751, 754 (1998); *Cook v. AVI Casino Enterprises, Inc.*, 548 F.3d 718, 725 (9th Cir. 2008), *cert. denied*, 556 U.S. 1221 (2009). "It is settled that a waiver of [tribal] sovereign immunity cannot be implied but must be unequivocally expressed." *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978) (internal quotes omitted).

There can be no credible dispute that the Tribe retains its inherent sovereign immunity. There is no allegation here that the Tribe has expressly consented to this suit – to the contrary, Plaintiffs have conceded that they have not named the Tribe as a defendant for this very reason.

Under the last step of the analysis, this Court must determine (on an emergency basis) whether this action should proceed in the Tribe's absence. The Ninth Circuit has noted that, although it continues to apply the Rule 19 framework in cases involving sovereign tribes, "some courts have held that sovereign immunity forecloses in favor of tribes the entire balancing process under Rule 19(b)." *American Greyhound Racing*, 305 F.3d at 1025; *see also Dawavendewa v. Salt River Project,* 276 F.3d 1150, 1156 (9th Cir. 2002), *cert. denied*, 537 U.S. 820 (2002) (holding that tribal sovereign immunity bars joinder, and noting "[i]f the necessary party enjoys sovereign immunity from suit, some courts have noted that there may be very little need for balancing Rule 19(b) factors because immunity itself may be viewed as 'one of those interests "compelling by themselves,"' which requires dismissing the suit").

But even under the traditional Rule 19(b) analysis, emergency relief against Live Nation is not appropriate because the Tribe's absence will render this action subject to dismissal. The potential prejudice to the Tribe is apparent from the interests outlined above. *See American Greyhound Racing*, 305 F.3d at 1024-25 ("the first factor of prejudice … largely duplicates the consideration that made a

party necessary under Rule 19(a): a protectable interest that will be impaired or impeded by the party's absence"). The potential prejudice to the Tribe, for example through court orders that Plaintiffs concede are nothing but attempts to "back door" an injunction against the Tribe's COACHELLA CROSSROADS trademark and other uses of Coachella that Plaintiffs disagree with, could not be mitigated.

Moreover, Plaintiffs cannot obtain an adequate remedy in the Tribe's absence, as Live Nation does not have the ability to prevent the Tribe's event from going forward, or even to prevent the Tribe from promoting the event. Indeed, Plaintiffs are not even asking the Court for that relief (because they know it is unavailable).[3] And even if Plaintiffs could obtain an adequate judgment without the Tribe, "the only 'adequate' remedy would be at the cost of" the Tribe. *Makah Indian Tribe v. Verity*, 910 F.2d 555, 560 (9th Cir. 1990); *see also, e.g., Dawavendewa*, 276 F.3d at 1162 (noting any type of injunctive relief would necessarily result in prejudice to the Indian tribes). Regardless of whether Plaintiffs would have an adequate remedy if the action is dismissed, the Ninth Circuit has made clear that the Tribe's "interest in maintaining [its] sovereign immunity outweighs the plaintiffs' interest in litigating their claims." *American Greyhound Racing*, 305 F.3d at 1025; *see also Turley*, 70 Fed. Appx. at 936 ("The plaintiffs may have difficulty obtaining relief if the case is dismissed, but when tribal sovereign immunity is at stake, that factor has little weight."). That instruction carries even more weight here, where Plaintiffs are seeking an emergency restraining order based on a brief that relegates the Tribe's sovereign rights to a footnote.

The cases cited by Plaintiffs in their memorandum (Dkt. 9 at 25 n.6) are not to the contrary, as they do not address the circumstance where the alleged direct infringer is an Indian tribe that enjoys sovereign immunity. As the cases cited above

---

[3] The wording of Plaintiffs' proposed restraining order is broad enough to arguably encompass the Tribe, though for the reasons discussed in this brief the Court lacks jurisdiction to enter such an order against the Tribe.

make clear, an Indian tribe is an indispensable party where it has interests in the subject matter of the lawsuit and its ability to protect those interests will be impaired if the lawsuit proceeds without the tribe's participation. *See American Greyhound Racing*, 305 F.3d at 1025 (noting that tribal immunity essentially trumps all other Rule 19 factors). The Tribe's sovereign interests and the Ninth Circuit's mandate that tribes be joined in litigation that will impair or impede their ability to protect those interests materially distinguish this case from the cases cited by Plaintiffs, which hold only that a plaintiff may choose to leave out some alleged tortfeasors whose sovereign rights would not be impaired by a judgment against other defendants.

In short, this action will be dismissed. *See, e.g., Dawavendewa*, 276 F.3d at 1163 (affirming dismissal of complaint for failure to join Indian tribe as indispensable party); *Quileute Indian Tribe v. Babbitt*, 18 F.3d 1456, 1461 (9th Cir. 1994) (same); *Confederated Tribes v. Lujan*, 928 F.2d 1496, 1498 (9th Cir. 1991) (same). In light of that inevitable outcome, and for the same reasons, this Court should not grant interim injunctive relief based on claims as to which the absent Tribe is an indispensable party.

### B. Plaintiffs Cannot Establish Their Claims of Contributory Infringement

As noted above, Plaintiffs devote the vast majority of their brief to arguing that they are likely to succeed in establishing the Tribe's alleged direct infringement. They move on immediately to reference, in much more cursory fashion, the contributory infringement theory that is before the Court in this Ex Parte Application, which only arises "[o]nce a Plaintiff has established the direct infringement." (Dkt. 9 at 20.) Plaintiffs ignore completely, and conveniently, the fact that they cannot establish direct infringement because they cannot bring claims for direct infringement against the Tribe.

"The existence of direct infringement is a necessary element of a claim for contributory infringement." *Petroliam Nasional Berhad v. GoDaddy.com, Inc.*, 897 F. Supp. 2d 856, 867 (N.D. Cal. 2012), *aff'd*, 737 F.3d 546 (9th Cir. 2013), *cert. denied*, 574 U.S. 815 (2014) (citing *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 795 (9th Cir. 2007), *cert. denied*, 553 U.S. 1079 (2008)); *see also* 4 *McCarthy on Trademarks and Unfair Competition* § 25:17 (5th ed.) ("By definition, there can be no liability for contributory infringement unless there is direct infringement."). This truism precludes the Court from finding that Plaintiffs are likely to prevail on their secondary claims against Live Nation.

Nor can Plaintiffs establish the other elements of a contributory infringement claim involving the provision of services, namely that Live Nation knew or had reason to know that the Tribe was engaging in trademark infringement, and that Live Nation had "[d]irect control and monitoring of the instrumentality used by a third party to infringe" Plaintiffs' marks. *Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 658 F.3d 936, 942 (9th Cir. 2011) (citations omitted); *see also Lockheed Martin Corp. v. Network Solutions, Inc.,* 194 F.3d 980, 984 (9th Cir. 1999) (the relevant inquiry is "the extent of control exercised by the defendant over the third party's means of infringement").

Plaintiffs' moving papers contain no allegations or evidence that would support such a finding. To the contrary, Plaintiffs concede that they and the Tribe have negotiated at length for several years about the extent to which Plaintiffs' music festival may have appropriated the name of the Tribe's homeland. Plaintiffs also concede that until this Ex Parte Application they never took any action, even when sovereign immunity was not at issue (e.g. the Tribe's application to register the COACHELLA CROSSROADS mark). (Dkt. 9 at 6-7.) And as noted above, Plaintiffs have not come close to establishing that Live Nation controls the Tribe's venue name, posters, social media, the event itself or other alleged sources of infringement. If anything, the factual record Plaintiffs put before the Court in their

1  Ex Parte Application proves that Plaintiffs will inevitably fail to establish the
2  elements of a contributory infringement claim.
3       Finally, finding that Plaintiffs are likely to prevail in their proxy claims
4  against Live Nation would contravene Ninth Circuit law.  Stripped of its conclusory
5  characterizations, Plaintiffs' filings comprise nothing more than an allegation that
6  Live Nation is contributorily liable because it makes tickets to the Tribe's New
7  Year's event at the Coachella Crossroads venue available to the public.  (Dkt. 1, ¶
8  85.)  Live Nation's alleged conduct is thus closer to the payment systems at issue in
9  *Perfect 10*, in which the Ninth Circuit ruled that credit card companies and affiliated
10 banks were not contributorily liable for copyright infringement.  494 F.3d at 795.
11 Here, similarly, Live Nation is not alleged to have had any direct involvement with
12 the Tribe's purported underlying infringement, namely the Tribe's selection of
13 COACHELLA CROSSROADS as the name of the venue and the creation of the
14 posters and other advertising accouterments at the heart of Plaintiffs' claims.
15       On this factual record, Plaintiffs' quibbles over the specific wording of the
16 event listing and ticket types on the Ticketmaster website fall far short of justifying
17 any injunctive relief, much less a "drop everything" emergency restraining order.
18 *See Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal.
19 1995).  Put simply, Plaintiffs have brought their claims under the guise of a tactical
20 emergency restraining order creating the illusion of extreme urgency precisely
21 because they cannot demonstrate that they are likely to succeed on their claims
22 against Live Nation.  The Court should find accordingly and deny the Ex Parte
23 Application.[4]

---

[4] Plaintiffs' claim for violation of California unfair competition and common law trademark law is coextensive with their federal contributory infringement claims. *See, e.g., Coach, Inc. v. Citi Trends, Inc.*, Case No. CV 17-4775 DMG (KSx), 2019 WL 6354367, at *12 (C.D. Cal. Oct. 23, 2019). For the reasons discussed above, Plaintiffs' application for a restraining order as to this claim should also be denied.

### C. Plaintiffs Have Not Otherwise Met the Standard for a Temporary Restraining Order

"[T]he standard for a TRO is 'substantially identical' to the standard for a preliminary injunction. … To obtain a TRO or a preliminary injunction, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of equities tips in favor of the moving party; and (4) that an injunction is in the public interest." *Burcham v. City of Los Angeles*, No. 2:21-cv-07296-RGK-JPR, 2021 WL 5049099, at *2 (C.D. Cal. Oct. 27, 2021). Plaintiffs have not established any of those elements.

A court cannot issue a temporary restraining order without a showing of irreparable harm. *Id.* A trademark infringement plaintiff may be entitled to a presumption of irreparable harm, but the presumption applies only "upon a finding of likelihood of success on the merits … in the case of a motion for a preliminary injunction or temporary restraining order," and is rebuttable. 15 U.S.C. § 1116(a).

For the reasons discussed above, Plaintiffs have not demonstrated a likelihood of success on their contributory infringement claims, and they have not otherwise offered evidence that the conduct alleged in their complaint will cause them irreparable harm. *See Zamfir v. Casperlabs, LLC*, 528 F. Supp. 3d 1136, 1150 (S.D. Cal. 2021) (where plaintiff fails to show a likelihood of success on the merits, a likelihood of irreparable harm must be demonstrated) (citing *Herb Reed Enterprises, LLC v. Florida Entertainment Management, Inc.*, 736 F.3d 1239 (9th Cir. 2013), *cert. denied*, 574 U.S. 815 (2014)).

If anything, Plaintiffs' papers undermine any claim of irreparable harm. Plaintiffs allege that the Coachella Valley Music & Arts Festival is "one of the most critically acclaimed music and art festivals in the world … a sold-out event which attracts hundreds of thousands of attendees to Southern California each April." (Dkt. 1, ¶¶ 1, 21-26.) Tickets for the 2022 Coachella festival are already sold out.

(*Id.* ¶ 24 & Ex. 2.) Thus, Plaintiffs' own allegations make clear that the Tribe's use of its COACHELLA CROSSROADS mark in connection with live events since May 2021 (*id.* ¶ 62) has done nothing to harm the Coachella Festival's success or reputation. The fact that the specific event at issue in this lawsuit is a one-night New Year's celebration further distances Tribe's event from Plaintiffs' annual multi-day spring festival. In the absence of "concrete evidence" that Plaintiffs are likely to suffer irreparable harm, their application for a restraining order must be denied. *See adidas Am., Inc. v. Skechers USA, Inc.*, 890 F.3d 747, 761 (9th Cir. 2018) (reversing grant of preliminary injunction where trademark infringement plaintiff "failed to provide concrete evidence" that it would suffer irreparable harm); *Clark Material Handling Co. v. Zoomlion Heavy Indus. Sci. & Tech. Co.*, No. 18-CV-5853-CBM-E, 2018 WL 6252463, at *2 (C.D. Cal. Oct. 11, 2018) (denying preliminary injunction where "Plaintiff has not presented any specific evidence that the sale of Defendants' infringing products is likely to damage Plaintiff's business goodwill").

     A restraining order on this record would also be inequitable and contravene the public interest. The inequity and public interest implications of enjoining a service provider as an attempted end-around of the Tribe's sovereign immunity are self-evident. But moreover, Plaintiffs' litigation tactics independently warrant a finding that a restraining order against Live Nation would not be equitable or in the public interest.

     As the Central District has emphasized, in the context of an ex parte application for emergency relief, "it must be established that the moving party is without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect. … To show that the moving party is without fault, or guilty only of excusable neglect, requires more than a showing that the other party is the sole wrongdoer. It is the creation of the crisis—the necessity for bypassing regular motion procedures—that requires explanation." *Mission*

*Power*, 883 F. Supp. at 492.

This is a textbook example of the abuse *Mission Power* admonished against. As described above, Plaintiffs concede they have known about the Tribe's alleged infringement for years without taking any action. They knew about the New Year's event since at least October, and knew the Tribe had rejected their demands weeks ago. Yet Plaintiffs tactically (and transparently) waited to take any action until an unappealable restraining order could shut down ticket sales almost exactly fourteen days before the event is scheduled to occur. This abuse of the Court's ex parte procedures is yet another independent reason the Court should deny the Ex Parte Application. *See id.*; *see also* Judge's Procedures for the Hon. R. Gary Klausner.[5]

## IV.  CONCLUSION

Plaintiffs' Ex Parte Application and supporting documents do not come close to satisfying the standard for an emergency restraining order against Live Nation. If anything, the concessions throughout the Complaint and Ex Parte Application establish that Plaintiffs will ultimately fail in their attempt to end run the Tribe's sovereign immunity by suing its service providers. The Court should deny the Ex Parte Application in its entirety.

DATED:  December 15, 2021      Respectfully submitted,

KILPATRICK TOWNSEND & STOCKTON LLP

By:   /s/ Christopher T. Varas
      CHRISTOPHER T. VARAS
      LARRY W. MCFARLAND

Attorneys for Defendant Live Nation Entertainment, Inc.

---

[5] https://www.cacd.uscourts.gov/honorable-r-gary-klausner