UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-09631-RGK-GJS | Date | December 20, 2021 |
|---|---|---|---|
| Title | *Coachella Music Festival, LLC et al v. Live Nation Entertainment, Inc. et al* | | |

| Present: The Honorable | R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Sharon L. Williams | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiff: | | Attorneys Present for Defendant: |
| Not Present | | Not Present |

**Proceedings:** (IN CHAMBERS) Order Re: *Ex Parte* Application for Temporary Restraining Order [DE 8]

## I. INTRODUCTION

On December 13, 2021, Coachella Music Festival, LLC and Goldenvoice, LLC (collectively, "Plaintiffs") filed a lawsuit against Live Nation Entertainment, Inc. ("Live Nation") and Bluehost, Inc. ("Bluehost"; collectively, "Defendants"), alleging contributory trademark infringement, false designation of origin, and unfair competition. (*See* Compl., ECF No. 1.) That same day, Plaintiffs filed an *ex parte* application for a temporary restraining order ("TRO") as to their contributory infringement claim. (*See* ECF Nos. 8–11.) Only Live Nation filed an opposition to the TRO application. For the following reasons, the Court **GRANTS** Plaintiffs' TRO Application **in part**.

## II. FACTUAL BACKGROUND

Plaintiffs allege the following:

Plaintiffs produce and own the intellectual property rights to Coachella Valley Music and Arts Festival ("Coachella"). Coachella is "one of the country's premier music and arts festivals." (Compl. ¶ 21.) It is held every April at an outdoor venue in the desert in Southern California. An estimated 750,000 people attend the event over two consecutive weekends, and tickets typically sell out within one hour. Plaintiffs own the following standard character service and trademarks: COACHELLA, CHELLA, and COACHELLA VALLEY MUSIC AND ARTS FESTIVAL. They also own the following stylized mark:

COACHELLA

(collectively, the "Coachella Marks").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-09631-RGK-GJS | Date | December 20, 2021 |
|---|---|---|---|
| Title | *Coachella Music Festival, LLC et al v. Live Nation Entertainment, Inc. et al* | | |

Twenty-Nine Palms Band of Mission Indians and Coachella Crossroads, LLC (collectively, "Twenty-Nine Palms") own and operate an outdoor venue called Coachella Crossroads, which is located 5 miles from the Coachella venue.[1] In April 2018, Twenty-Nine Palms applied to register the mark COACHELLA CROSSROADS with the United States Patent and Trademark Office ("USPTO"). The USPTO issued an office action[2], citing a likelihood of confusion with Plaintiffs' Coachella Marks. In October 2018, Twenty-Nine Palms responded to the office action by revising its application to name only one service that the mark would cover: "providing sports facilities for sporting events, sports, and athletic competitions." (Compl. ¶ 58.) Plaintiffs had until January 8, 2019 to oppose the application, but they chose not to oppose it because Twenty-Nine Palms told Plaintiffs that the venue would only be used for local community events, such as youth soccer, and not music events.

Nevertheless, Twenty-Nine Palms began promoting live music events at Coachella Crossroads, where prominent country artist Toby Keith performed in May 2021. Twenty-Nine Palms is currently promoting an event called Coachella Day One 22, which is scheduled for December 31, 2021 at Coachella Crossroads. This live music event "directly competes with Plaintiffs' fan base." (Compl. ¶ 68.) Plaintiffs allege that Twenty-Nine Palms' promotional materials copy Plaintiffs' materials in several ways. For instance, Twenty-Nine Palms has adopted elements from Plaintiffs' advertising for its own advertising—namely, a "Ferris wheel with silhouettes of live performers all depicted in orange, yellow, and red sunset colors." (Compl. ¶ 72.) Also, the name of the event mirrors how Coachella attendees describe each day of Coachella—Coachella Weekend One or Weekend Two, and within each weekend, Coachella Day One, Day Two, or Day Three.

Defendant Live Nation sells tickets to Coachella Day One 22 on its ticketing platform, Ticketmaster.com. Plaintiffs sent Live Nation a cease-and-desist letter on October 28, 2021. In response, Live Nation changed the event name on its listing to Day One 22. However, one ticket option is still described as "Coachella Complimentary Offer" and the event "continues to be advertised as Coachella Day One 22 in certain Live Nation advertising and in other advertising associated with the event." (Compl., Ex. 15; Compl. ¶ 90.) Plaintiffs sent another letter on November 12, 2021, but have not received a response. Defendant Bluehost hosts the website CoachellaCrossroads.com, which promotes the Coachella Day One 22 event. Plaintiffs sent Bluehost a cease-and-desist letter on November 8, 2021. But Bluehost continues to host the website.

---

[1] Plaintiffs have not sued Twenty-Nine Palms because they assert that Twenty-Nine Palms is entitled to sovereign immunity and therefore not subject to suit.

[2] "An office action is an official letter sent by the USPTO. In it, an examining attorney lists any legal problems with your chosen trademark, as well as with the application itself. [An applicant] must resolve all legal problems in the office action before [the USPTO] can register [the] trademark." *Responding to Office Actions*, United States Patent and Trademark Office, https://www.uspto.gov/trademarks/maintain/responding-office-actions (last visited Dec. 15, 2021).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-09631-RGK-GJS | Date | December 20, 2021 |
|---|---|---|---|
| Title | *Coachella Music Festival, LLC et al v. Live Nation Entertainment, Inc. et al* | | |

Plaintiffs allege that Defendants' unauthorized use of the Coachella Marks "creates a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of Twenty-Nine Palms' event and venue, and is likely to falsely suggest a sponsorship, connection, license, or association of Twenty-Nine Palms and Defendants with Plaintiffs and COACHELLA." (Compl. ¶ 99.)

### III.   JUDICIAL STANDARD

While a preliminary injunction is intended to preserve the status quo pending a judgment on the merits, a TRO is intended to preserve the status quo only until a preliminary injunction hearing can be held. *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 422 (4th Cir. 1999) (citing *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cty.*, 415 U.S. 423, 439 (1974). "Consequently, [TROs] are of limited duration, not—like preliminary injunctions—of indefinite duration." *Id.*

Despite this difference, the standard for a TRO is "substantially identical" to the standard for a preliminary injunction. *See Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). To obtain a TRO or a preliminary injunction, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of equities tips in favor of the moving party; and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (the "*Winter* test"). The court may also apply a sliding scale test, in which the elements of the *Winter* test are balanced "so that a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). The moving party has the burden of persuasion. *Hill v. McDonough*, 547 U.S. 573, 584 (2006).

### IV.   DISCUSSION

In their TRO Application, Plaintiffs request that the Court enjoin Defendants' "use of COACHELLA CROSSROADS, COACHELLA DAY ONE 22, or any similar designation." (TRO Appl. at 25, ECF No. 9.) To evaluate their request, the Court considers each element of the *Winter* test in turn.

#### A.   Likelihood of Success on the Merits

Live Nation argues that Plaintiffs are unlikely to succeed on their contributory infringement claims for two reasons: (1) the Court will dismiss this case for failure to join an indispensable party under Federal Rule of Civil Procedure ("Rule") 19; or (2) Plaintiffs cannot establish the elements

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:21-cv-09631-RGK-GJS | Date | December 20, 2021 |
| Title | *Coachella Music Festival, LLC et al v. Live Nation Entertainment, Inc. et al* | | |

required to prove contributory trademark infringement. The Court rejects both arguments and finds that Plaintiffs are likely to prevail on their contributory trademark infringement claims in part.

1. *Twenty-Nine Palms is not an Indispensable Party under Rule 19*

A court may dismiss a case for failure to join an indispensable party under Rule 19. *See* Fed. R. Civ. P. 12(b)(7); *see also* Fed. R. Civ. P. 19(b). To determine whether a person must be joined to a lawsuit under Rule 19, courts first determine whether the party is necessary and then whether it is feasible to join that party. *EEOC v. Peabody Western Coal Co.*, 400 F.3d 774, 779 (9th Cir. 2005). If joinder is necessary and feasible, then "the court must order that the person be made a party." Fed. R. Civ. P. 19(a)(2). But if joinder is not feasible, even if it is necessary, courts consider specific factors to "determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b). Dismissal means that the absent party is "indispensable." *EOCC*, 400 F.3d at 780.

Rule 19(a) describes three situations that make a party necessary.[3] Live Nation argues that one of those situations applies here: that is, Twenty-Nine Palms has interests that relate to the subject of the action and its absence would "as a practical matter impair or impede [its] ability to protect the interest[s]." Fed. R. Civ. P. 19(a)(1)(B)(i).

Plaintiffs would have the Court find that because infringement actions sound in tort, infringers are jointly and severally liable, which means that each infringer is "merely a permissive party to an action" and therefore cannot be necessary. *Temple v. Synthes Corp.*, 498 U.S. 5, 7 (1990) (quoting the Advisory Committee Notes to Rule 19(a)). Plaintiffs are correct that a joint tortfeasor is not automatically a necessary or indispensable party. *See id.* ("It has long been the rule that it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit.") However, this rule does not preclude a joint tortfeasor from being found indispensable in some instances. "[T]here may be circumstances in which an alleged joint tortfeasor has particular interests that cannot be protected in a legal action unless it is joined under Rule 19(a)(1)(B)." *Ward v. Apple Inc.*, 791 F.3d 1041, 1048 (9th

---

[3] A party is necessary in any of the following situations:
    (A) in that party's absence, the court cannot accord complete relief among existing parties; or
    (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
        (i) as a practical matter impair or impede the person's ability to protect the interest; or
        (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-09631-RGK-GJS | Date | December 20, 2021 |
|---|---|---|---|
| Title | *Coachella Music Festival, LLC et al v. Live Nation Entertainment, Inc. et al* | | |

Cir. 2015). Therefore, the Court must still engage in the "practical" and "fact specific" analysis that Rule 19 requires. *See Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990).

The question becomes whether Twenty-Nine Palms' absence in this litigation will, as a practical matter, impair or impede its ability to protect its interests. *See Makah Indian Tribe*, 910 F.2d at 558. Live Nation bears the burden of persuasion. *Id*. According to Live Nation, Twenty-Nine Palms' interests include ownership of the COACHELLA CROSSROADS mark, ownership of the Coachella Crossroads venue, and use of the CoachellaCrossroads.com domain. Live Nation baldly asserts that "[p]roceeding with this action in [Twenty-Nine Palms'] absence would necessarily impair [its] ability to protect those interests." (Opp'n at 6, ECF No. 21.) But Live Nation offers no explanation with respect to *how* proceeding with this action would impair Twenty-Nine Palms. Beyond being possibly unable to use Ticketmaster.com or CoachellaCrossroads.com in exactly the way that it wants, Twenty-Nine Palms does not appear to face any impairment. And any possible impairment is "minimized if the absent party is adequately represented in the suit." *Makah Indian Tribe*, 910 F.2d at 558. Here, Defendants may adequately represent Twenty-Nine Palms in defending against Plaintiffs' contributory trademark infringement claim. Because direct infringement is a required element of contributory infringement, Defendants are likely to argue that Twenty-Nine Palms did not directly infringe on the Coachella Marks, therefore adequately representing Twenty-Nine Palms' interests.

Accordingly, Live Nation fails to meet its burden of demonstrating that Twenty-Nine Palms is a necessary party. The Court therefore finds that Rule 19 does not warrant dismissal.

2. *Plaintiffs are Likely to Succeed on Their Contributory Infringement Claim in part*

Plaintiffs allege that Live Nation is contributing to Twenty-Nine Palms' direct infringement of the Coachella Marks by (1) promoting and selling tickets for music events at Coachella Crossroads; and (2) promoting and selling tickets for the Coachella Day One 22 music event on December 31, 2021. They also allege that Bluehost is contributing to Twenty-Nine Palms' direct infringement of the Coachella Marks by hosting certain content at CoachellaCrossroads.com, namely (1) promotion of music events at Coachella Crossroads and (2) promotion of Coachella Day One 22.

To prevail on their contributory infringement claims, Plaintiffs must first establish direct infringement by a third party. *See Perfect 10, Inc. v. Visa Intern. Service Ass'n*, 494 F.3d 788, 807 (9th Cir. 2007). Then, they must prove that Defendants knew about the direct infringement and had "[d]irect control and monitoring of the instrumentality used by [the] third party to infringe" the Plaintiffs' marks. *See id.*; *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 984 (9th Cir. 1999).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-09631-RGK-GJS | Date | December 20, 2021 |
|---|---|---|---|
| Title | *Coachella Music Festival, LLC et al v. Live Nation Entertainment, Inc. et al* | | |

As discussed below, the Court finds that Plaintiffs are likely to succeed on just two claims: (1) that Live Nation contributorily infringed on the Coachella Marks by promoting and selling tickets for Coachella Day One 22; and (2) that Bluehost contributorily infringed on the Coachella Marks by hosting content that promotes Coachella Day One 22 on CoachellaCrossroads.com.

a. *Element 1: Direct Infringement by a Third Party*

To establish direct infringement by a third party, Plaintiffs must prove that they hold a valid, protectable mark and that Twenty-Nine Palms' "use of the mark is likely to cause consumer confusion." *See Applied Info. Scis. Corp. v. eBAY, Inc.*, 511 F.3d 966, 969 (9th Cir. 2007).

There is no dispute that the Coachella Marks are valid, protectable marks, so the only question is whether Twenty-Nine Palms' use of the mark is likely to cause consumer confusion. Courts consider the following factors to determine the likelihood of causing consumer confusion: (1) strength of the mark; (2) proximity of the goods or services; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) intent; and (8) likelihood of expansion. *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348 (9th Cir. 1979) (the "*Sleekcraft* factors"). These factors are "illustrative rather than exhaustive, and best understood as simply providing helpful guideposts." *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1030 (9th Cir. 2010).

Plaintiffs allege that Twenty-Nine Palms uses the Coachella Marks in two distinct ways: (1) in promoting the Coachella Day One 22 event; and (2) in promoting general music events at the Coachella Crossroads venue. The Court analyzes each use separately, addressing each *Sleekcraft* factor in turn to determine the likelihood of causing consumer confusion.[4]

i. *Promoting Coachella Day One 22*

**Strength of the Mark:** "The stronger a mark—meaning the more likely it is to be remembered and associated in the public mind with the mark's owner—the greater the protection it is accorded by the trademark laws." *Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1058 (9th Cir. 1999). Courts consider "conceptual strength" and "commercial strength." *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1149 (9th Cir. 2011). "Conceptual strength involves classification of a mark 'along a spectrum of generally increasing inherent distinctiveness as generic,

---

[4] The Court notes that Live Nation fails to address the *Sleekcraft* factors in its opposition and merely argues that Plaintiffs cannot establish direct infringement "because they cannot bring claims for direct infringement against [Twenty-Nine Palms]" due to sovereign immunity. (Opp'n to TRO Appl. at 9.) However, there is no legal requirement that the alleged direct infringer be joined in the action to find a party liable for contributory infringement.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-09631-RGK-GJS | Date | December 20, 2021 |
|---|---|---|---|
| Title | *Coachella Music Festival, LLC et al v. Live Nation Entertainment, Inc. et al* | | |

descriptive, suggestive, arbitrary, or fanciful.'" *Id.* (quoting *Brookfield*, 174 F.3d at 1058). Commercial strength is based on "actual marketplace recognition," where "advertising expenditures can transform a suggestive mark into a strong mark." *Brookfield*, 174 F.3d at 1058.

Plaintiffs concede that the Coachella Marks are descriptive because they describe a geographic location and are therefore not inherently distinct. (*See* TRO Appl. at 15.) However, a "descriptive . . . mark may be strengthened by such factors as extensive advertising, length of exclusive use, public recognition and uniqueness." *Accuride Intern., Inc. v. Accuride Corp.*, 871 F.2d 1531, 1536 (9th Cir. 1989). Plaintiffs have offered evidence of the Coachella Marks' commercial strength. For instance, Plaintiffs offered evidence that they have dedicated significant amounts of money in advertising for over 18 years, and as a result, hundreds of thousands of people attend Coachella each year and millions of users visit Coachella's website. Accordingly, this factor favors finding consumer confusion likely.

**Proximity of the Goods:** "Related goods are generally more likely than unrelated goods to confuse the public as to the producers of the goods." *Brookfield*, 174 F.3d at 1055. Coachella and Coachella Day One 22 are both music events at outdoor venues in the desert in Southern California. Because they are closely related, this factor also supports finding consumer confusion likely.

**Similarity of the Marks:** The "more similar the marks in terms of appearance, sound, and meaning, the greater the likelihood of confusion." *Brookfield*, 174 F.3d at 1054. The Coachella Marks and Coachella in Day One 22 are pronounced the same and bear similar meanings. Both indicate outdoor music festivals. The marks become even more similar because Coachella attendees describe each day of Coachella as Coachella Day One, Coachella Day Two, or Coachella Day Three. This similarity makes consumer confusion likely.

**Evidence of Actual Confusion:** Plaintiffs have offered specific evidence of actual confusion. A listing on TicketSmarter.com advertised Coachella Day One 22 as follows: "Attend the world's top music festival to see the biggest names in music all in one place when you get Coachella Day One 22' tickets." (Bernstein Decl., Ex. 26, ECF No. 11-26.) This advertisement suggests that this ticket vendor actually confused Coachella Day One 22 with Coachella. This factor therefore also favors finding consumer confusion likely.

**Marketing Channels Used:** Because Plaintiffs and Twenty-Nine Palms both market their events over the Internet, likely targeting consumers in the same geographic area, this factor supports a likelihood of consumer confusion. Furthermore, Twenty-Nine Palms' advertisements appear to have adopted elements from Coachella's advertising—namely a Ferris wheel, sunset, and silhouettes of palm trees. (*Compare* Bernstein Decl., Ex. 22, ECF No. 11-22 *with* Bernstein Decl., Ex. 23, ECF No. 11-23.) This overlap makes consumer confusion even more likely.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-09631-RGK-GJS | Date | December 20, 2021 |
|---|---|---|---|
| Title | *Coachella Music Festival, LLC et al v. Live Nation Entertainment, Inc. et al* | | |

**Degree of Care:** Courts expect a customer "to be more discerning—and less easily confused—when he is purchasing expensive items." *Brookfield*, 174 F.3d at 1060. But "when dealing with inexpensive products, customers are likely to exercise less care, thus making confusion more likely." *Id*. Here, there is evidence that the Coachella Day One 22 event is inexpensive. Ticketmaster.com advertises a "Coachella Complimentary Offer." (Bernstein Decl., Ex. 2, ECF No. 11-25.) Customers seeking free tickets are less likely to exercise care, which supports a likelihood of consumer confusion.

**Intent:** "When the alleged infringer knowingly adopts a mark similar to another's, reviewing courts presume that the defendant can accomplish his purpose: that is, that the public will be deceived." *Sleekcraft*, 599 F.2d at 354. Without evidence to the contrary, Twenty-Nine Palms' use of the Coachella Marks in naming the Coachella Day One 22 event appears to be intentional. There does not seem to be a reason why Twenty-Nine Palms named its event Coachella Day One 22, other than to lead the public to believe that Coachella/Plaintiffs sponsor its event. As such, this factor weighs toward a likelihood of consumer confusion.

**Likelihood of Expansion:** The Court declines to consider this factor because "[w]here two companies are direct competitors, this factor is unimportant." *Network Automation*, 638 F.3d at 1153. Here, Coachella and Coachella Day One 22 directly compete.

On balance, the *Sleekcraft* factors indicate a likelihood of consumer confusion based on Twenty-Nine Palms' promotion of its December 31, 2021 music event as currently named: Coachella Day One 22. Therefore, Plaintiffs are likely to establish that Twenty-Nine Palms directly infringed on the Coachella Marks by promoting Coachella Day One 22.

ii. *Promoting General Music Events at Coachella Crossroads*

However, Plaintiffs are *not* likely to establish that Twenty-Nine Palms directly infringed on the Coachella Marks by promoting general music events at Coachella Crossroads. Analysis of the *Sleekcraft* factors warrant a different result for this use. While the Court still finds that the Coachella Marks are strong and that similar marketing channels are used, five remaining factors support finding that consumer confusion is unlikely:

- **Proximity of the Goods:** Coachella is a music festival and Coachella Crossroads is a venue. They are dissimilar. A music event at Coachella Crossroads might be similar, but the Court cannot accurately evaluate the proximity of Coachella to a hypothetical event.
- **Similarity of the Marks:** While similar in appearance and sound, Coachella and Coachella Crossroads have different meanings. Coachella denotes a music festival, while Coachella Crossroads denotes a place.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-09631-RGK-GJS | Date | December 20, 2021 |
|---|---|---|---|
| Title | *Coachella Music Festival, LLC et al v. Live Nation Entertainment, Inc. et al* | | |

- **Evidence of Actual Confusion:** Plaintiffs have not offered evidence of actual confusion between Coachella and Coachella Crossroads.
- **Degree of Care:** The costs of music festival can vary widely. Therefore, the Court cannot accurately evaluate the degree of care a consumer might exercise when purchasing tickets to a hypothetical event at Coachella Crossroads.
- **Intent:** Twenty-Nine Palms registered the COACHELLA CROSSROADS mark to cover services for "providing sports facilities for sporting events, sports, and athletic competitions." (Bernstein Decl., Ex. 13, ECF No. 11-13.) This fact negates a finding of intent.

Accordingly, Plaintiffs are *not* likely to establish that Twenty-Nine Palms directly infringed on the Coachella Marks by promoting general music events at Coachella Crossroads. The Court now considers the remaining elements of Plaintiffs' contributory infringement claims.

### b. *Element 2: Knowledge*

Plaintiffs are likely to establish that Defendants knew about Twenty-Nine Palms' infringing act. Plaintiffs sent Defendants cease-and-desist letters that informed Defendants of Twenty-Nine Palms' alleged infringement—that is, naming its December 31 music event Coachella Day One 22. (*See* Letters, Steele Decl., Exs. 1–3, 5, ECF Nos. 10-1–3, 10-5.) Live Nation appears to have acknowledged the first letter by changing the name of the event on its listing to Day One 22. Although Bluehost did not respond to its letter, there is no argument or evidence that it never received actual notice.

### c. *Element 3: Control*

Plaintiffs are also likely to establish that Defendants had "[d]irect control and monitoring of the instrumentality used by [Twenty-Nine Palms] to infringe" the Coachella Marks. *See Lockheed Martin Corp.*, 194 F.3d at 984. While, as Live Nation argues, Defendants do not have control over all of Twenty-Nine Palms' "alleged sources of infringement," such as Twenty-Nine Palms' "venue name, posters, social media, [and] the event itself," Defendants have control over two specific means of infringement: (1) Live Nation controls what Ticketmaster.com lists on its website; and (2) Bluehost controls what content it hosts on CoachellaCrossroads.com. Defendants have "direct control over the 'master switch.'" *Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 658 F.2d 936, 943 (9th Cir. 2011).

Live Nation argues that this case is similar to *Perfect 10*, in which the court found that a credit card company was not liable for contributory infringement because it did not have direct control over the instrument used to infringe the plaintiff's trademarks. *See* 494 F.3d at 807. However, in *Perfect 10*, the defendant did not "have the power to remove infringing material from [the] websites." *Id*. Here, Defendants do have that power. As such, Plaintiffs can satisfy this element.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-09631-RGK-GJS | Date | December 20, 2021 |
|---|---|---|---|
| Title | *Coachella Music Festival, LLC et al v. Live Nation Entertainment, Inc. et al* | | |

In sum, the Court finds that Plaintiffs are likely to succeed in proving (1) that Live Nation contributorily infringed on the Coachella Marks by promoting and selling tickets for Coachella Day One 22; and (2) that Bluehost contributorily infringed on the Coachella Marks by hosting content that promotes Coachella Day One 22 on CoachellaCrossroads.com.

### B.  Likelihood of Irreparable Harm

A likelihood of success on the merits entitles Plaintiffs to a "rebuttable presumption of irreparable harm." 15 U.S.C. § 1116(a). Defendants fail to rebut this presumption. Bluehost did not oppose the TRO Application, and Live Nation advances only one, uncompelling argument. Live Nation argues that Plaintiffs' assertions about Coachella's incredible success demonstrate that its reputation will not suffer material harm from Twenty-Nine Palms' "one-night New Year's celebration." (Opp'n to TRO Appl. at 13.) This argument is simply unpersuasive and does not rebut the presumption of irreparable harm.

### C.  Balance of Equities and Public Interest

The balance of equities favors issuing this TRO. The TRO will not interrupt Defendants' respective businesses, beyond requiring them to stop promoting Twenty-Nine Palms' music event under the name Coachella Day One 22 on its websites. Defendants have not asserted that they will suffer any hardship from this order. But without this order, Plaintiffs face potential ongoing harm to their business and reputation. Also, the public interest favors issuing this TRO. Consumers have a right to not be confused about who sponsors a product or service. Accordingly, the Court finds that a TRO is warranted.

### V.  CONCLUSION

For the foregoing reasons, the Court **GRANTS in part** Plaintiffs' TRO Application and **ENJOINS**:

    (1) Bluehost from hosting content on CoachellaCrossroads.com that promotes Twenty-Nine Palms' music event under the name Coachella Day One 22; and

    (2) Live Nation from promoting and selling tickets on Ticketmaster.com for Twenty-Nine Palms' music event under the name Coachella Day One 22.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-09631-RGK-GJS | Date | December 20, 2021 |
|---|---|---|---|
| Title | *Coachella Music Festival, LLC et al v. Live Nation Entertainment, Inc. et al* | | |

Because neither Defendant requested that Plaintiffs post a bond pursuant to Rule 65(c), and because the Court found that Defendants are unlikely to suffer hardship from this order, the Court waives the bond requirement.[5]

The Court also **ORDERS** the parties to show cause, in writing, as to why a preliminary injunction should not issue. Defendants have until Monday, December 27, 2021 at 12:00 PM to file a response to this order to show cause, and Plaintiffs have until Wednesday, December 29, 2021 at 12:00 PM to file a reply to the response.

**IT IS SO ORDERED.**

_____ : _____

Initials of Preparer

_____

---

[5] Rule 65(c) provides that a court may issue a TRO "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). Despite this mandate, a court "may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003).