| | |
|---|---|
| 1 | KILPATRICK TOWNSEND & STOCKTON LLP |
| 2 | Christopher T. Varas (State Bar No. 257080)<br>CVaras@kilpatricktownsend.com |
| 3 | Larry W. McFarland (State Bar No. 129668)<br>LMcFarland@kilpatricktownsend.com |
| 4 | 1801 Century Park East, Suite 2300<br>Los Angeles, CA 90067 |
| 5 | Telephone:  310-248-3830<br>Facsimile:   310-860-0363 |
| 6 | Attorneys for Defendant Live Nation Entertainment, Inc. |

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| COACHELLA MUSIC FESTIVAL, LLC ET AL,<br><br>            Plaintiff,<br><br>     v.<br><br>LIVE NATION ENTERTAINMENT, INC. ET AL,<br><br>            Defendant. | Case No. 2:21-cv-09631-RGK-GJS<br>Hon. R. Gary Klausner<br><br>**OPPOSITION TO PLAINTIFFS' EX PARTE APPLICATION FOR MODIFICATION OF TEMPORARY RESTRAINING ORDER**<br><br>Complaint Filed:  December 13, 2021<br>Trial DATE:  TBD |

# TABLE OF CONTENTS

I.   INTRODUCTION ............................................................................................. 1

II.  PERTINENT FACTS ....................................................................................... 3

III. ARGUMENT .................................................................................................... 7

   A. Plaintiffs Knew Before They Filed That This Is Not An Emergency, but Chose to Deceive the Court to Justify Their Continued Ex Parte Abuse ............................................. 7

   B. Plaintiffs Offer No Justification For Their Impermissibly Vague Modification of the Court's Order. ...................................................................................................... 8

   C. Plaintiffs Fail to Justify A Mandatory Injunction Ordering Live Nation to Invalidate Tickets ................................... 10

      1. The Proposed Mandatory Injunction Would Not Remedy Any "Extreme" Irreparable Harm ................... 11

      2. The Balance of Equities Favors Live Nation ....................... 13

      3. The Public Interest Would Be Disserved by the Expansion ............................................................................. 13

      4. The Mandatory Injunction Factors Favor Live Nation ..................................................................................... 13

   D. If the Court Grants Any Relief, it Should Order Plaintiffs to Post a Bond Commensurate with the Damage Any Expansion of the Restraining Order Would Inflict on Live Nation ......................................................... 14

   E. Request for Clarification and/or Modification of the Scheduling Order Regarding the Court's Order to Show Cause Why a Preliminary Injunction Should not Issue, in Light of Live Nation's Compliance and Plaintiffs' Constantly Moving Target. ............................................ 15

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Acolyte Techs. Corp. v. Jeja Int'l Corp.*,
  No. 11 CV 2012 MMA CAB, 2011 WL 4837490, at *3 (S.D. Cal. Oct. 12, 2011) .................................................................................................... 12

*Advanced Transit Dynamics, Inc. v. Ridge Corp.*,
  Case No. CV 15-1877 BRO, 2015 WL 12516692 (C.D. Cal. Aug. 24, 2015) .................................................................................................................. 14

*Columbia Pictures Industries, Inc. v. Fung*,
  710 F.3d 1020 (9th Cir. 2013) ...................................................................... 9

*Creative Power Sols. v. Energy Servs. Grp.*,
  Case No. CV-21-01559-PHX-DLR, 2021 WL 4503455 (D. Ariz. Oct. 1, 2021) ..................................................................................................... 15

*Diaz v. Bautista*,
  No. 2:10-cv-04690-JHN-JC, 2012 WL 13005556 (C.D. Cal. June 29, 2012) .............................................................................................................. 14

*Direct Source Seafood LLC v. Aqua Star (USA) Corp.*,
  No. C16-407RSL, 2016 WL 8738668 (W.D. Wash. June 30, 2016) ...................... 14

*Federal Trade Commission v. Kutzner*,
  Case. No. CV 16-00999-BRO, 2017 WL 5230565 (C.D. Cal. June 19, 2017) .............................................................................................................. 10

*Fortyune v. Am. Multi-Cinema, Inc.*,
  364 F.3d 1075 (9th Cir. 2004) ...................................................................... 9

*Guadalupe Police Officer's Ass'n v. City of Guadalupe*,
  No. CV 10-8061 GAF, 2011 WL 13217671 (C.D. Cal. Mar. 29, 2011) .............................................................................................................. 12

*Hellbusch v. Lane*,
  Case No. SACV 13-1973-JLS, 2014 WL 12577141 (C.D. Cal. Apr. 7, 2014) .............................................................................................................. 9

*Jorgensen v. Cassiday*,
  320 F.3d 906 (9th Cir. 2003) ........................................................................ 14

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Acolyte Techs. Corp. v. Jeja Int'l Corp.*,
  No. 11 CV 2012 MMA CAB, 2011 WL 4837490, at *3 (S.D. Cal. Oct. 12, 2011) .................................................................................................... 12

*Advanced Transit Dynamics, Inc. v. Ridge Corp.*,
  Case No. CV 15-1877 BRO, 2015 WL 12516692 (C.D. Cal. Aug. 24, 2015) .................................................................................................................. 14

*Columbia Pictures Industries, Inc. v. Fung*,
  710 F.3d 1020 (9th Cir. 2013) ...................................................................... 9

*Creative Power Sols. v. Energy Servs. Grp.*,
  Case No. CV-21-01559-PHX-DLR, 2021 WL 4503455 (D. Ariz. Oct. 1, 2021) ..................................................................................................... 15

*Diaz v. Bautista*,
  No. 2:10-cv-04690-JHN-JC, 2012 WL 13005556 (C.D. Cal. June 29, 2012) .............................................................................................................. 14

*Direct Source Seafood LLC v. Aqua Star (USA) Corp.*,
  No. C16-407RSL, 2016 WL 8738668 (W.D. Wash. June 30, 2016) ...................... 14

*Federal Trade Commission v. Kutzner*,
  Case. No. CV 16-00999-BRO, 2017 WL 5230565 (C.D. Cal. June 19, 2017) .............................................................................................................. 10

*Fortyune v. Am. Multi-Cinema, Inc.*,
  364 F.3d 1075 (9th Cir. 2004) ...................................................................... 9

*Guadalupe Police Officer's Ass'n v. City of Guadalupe*,
  No. CV 10-8061 GAF, 2011 WL 13217671 (C.D. Cal. Mar. 29, 2011) .............................................................................................................. 12

*Hellbusch v. Lane*,
  Case No. SACV 13-1973-JLS, 2014 WL 12577141 (C.D. Cal. Apr. 7, 2014) .............................................................................................................. 9

*Jorgensen v. Cassiday*,
  320 F.3d 906 (9th Cir. 2003) ........................................................................ 14

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*,
 571 F.3d 873 (9th Cir. 2009) .................................................................. 11, 12, 13, 14

*Meggitt (Orange County), Inc. v. Nie*,
 Case No. SACV 13-0239-DOC, 2014 WL 12573353 (C.D. Cal. Nov.
 3, 2014) ........................................................................................................... 10

*Nat. Res. Def. Council, Inc. v. Winter*,
 508 F.3d 885 (9th Cir. 2007) ............................................................................ 12

*Sharp v. Weston*,
 233 F.3d 1166 (9th Cir. 2000) .......................................................................... 10

*Trust Co. Bank v. Putman Pub. Group Inc.*,
 No. CV 87 07393 AHS(JRX), 1988 WL 62755, at *3 (C.D. Cal. Jan.
 4, 1988) ........................................................................................................... 13

**Other Authorities**

Fed. R. Civ. P. 65 ....................................................................................................... 9

Fed. R. Civ. P. 65(c) ................................................................................................ 14

Fed. R. Civ. P. 65(d) .................................................................................................. 9

Fed. R. Civ. P. 65(d)(1)(C) ........................................................................................ 9

## I. INTRODUCTION

Plaintiffs are wasting the Court's time with their latest emergency application. Live Nation is in compliance with the Court's order and does not control the CoachellaCrossroads.com website, which is owned and operated by the Twenty-Nine Palms Band of Mission Indians (the "Tribe"). Nor does Live Nation own, operate or control the Tribe's billboards, which are unrelated to the Court's existing order and operated by third parties Plaintiffs chose not to sue. Those facts alone would merit denial of Plaintiffs' latest ex parte application – their third in eight days.

But the record is even worse for Plaintiffs. Notwithstanding its lack of control, Live Nation acted in good faith and informed Plaintiffs *hours* before the midnight ex parte filing that Live Nation understood the Tribe had independently, and without obligation to do so, decided to "change the way it is promoting the event, *including changing the name on [the] website*" that Plaintiffs had complained about in their December 20 letter to Live Nation, and that Live Nation understood the changes would be implemented *by noon today*. Declaration of Christopher Varas in Support of Live Nation's Opposition to Plaintiffs' Ex Parte Application for Modification of Temporary Restraining Order ("Varas Decl."), Ex. 1.

Plaintiffs filed anyway, falsely representing to the Court that Live Nation had not responded to their December 20 complaints about the Tribe's website and requesting a restraining order that would enjoin Live Nation from selling or even validating previously sold tickets to the Tribe's event so long as Plaintiffs claimed the Tribe was infringing Plaintiffs' rights in any way. Plaintiffs also held their filing until minutes before midnight to give Live Nation the least possible amount of time to respond.

Live Nation has fully complied, in good faith, with the Court's previous order. As a third-party service provider that: 1) is fully in compliance with the Court's orders; 2) has no control over the Tribe's website or billboards; <u>and</u> 3) acted

in good faith by notifying Plaintiffs last night that it understood the Tribe was already in the process of changing the event name on the website Plaintiffs discussed in their December 20 letter, Live Nation objects in the strongest possible terms to Plaintiffs' continuing abuse of the ex parte process.  At an absolute minimum, ex parte applications require plaintiffs to treat the Court's notice requirements seriously and adhere to the highest standard of candor in their pleadings. The obligation is even more acute when the nominal defendant is merely a service provider that is in full compliance with this Court's orders.  Plaintiffs have, once again, chosen gamesmanship instead.

      While Plaintiffs' lack of candor and procedural gamesmanship independently justify denial of their latest ex parte application, their request for a modification of the restraining order fails substantively as well. Plaintiffs have presented absolutely no new material facts to justify their emergency application, as required under Ninth Circuit law.  They simply argue to the Court that Live Nation should be further enjoined because the Tribe is operating a website and otherwise promoting its event *outside* the Ticketmaster platform in a manner Plaintiffs object to. The Court has already rejected those assertions as a basis to broadly enjoin Live Nation.

      In any event, notwithstanding Live Nation's lack of control, Plaintiffs' purported factual basis for modifying the restraining order no longer exists.  Despite the fact that the Tribe is not subject to the Court's jurisdiction, Live Nation understands the name "Coachella Day One 22" no longer appears on the Tribe's website, consistent with Live Nation's pre-filing correspondence with Plaintiffs yesterday evening.  *See* Varas Decl., Ex. 2.

      The Tribe's billboards – owned by third parties that Plaintiffs elected not to sue – have nothing whatsoever to do with Live Nation or with the Court's current restraining order.  There is no legal or factual basis for the Court to restrain Live Nation from selling tickets – let alone mandating that Live Nation cancel existing tickets to the Tribe's event – based on Plaintiffs' new purported emergency

objection to physical installations like billboards, particularly when Plaintiffs chose not to sue the entities that own and control those installations in the first place. Nevertheless, in the interest of full disclosure, Live Nation is also informed that the Tribe began working to remove the word "Coachella" from the name of the event on its billboards before Plaintiffs even disclosed that they intended to seek more emergency relief based on the billboards. *Id.*, ¶ 5.

Finally, Plaintiffs' requested expansion of the Court's order comprises an impermissible mandatory injunction that would force Live Nation to cancel and refund every ticket to the Tribe's event, irreparably harming Live Nation and consumers.

## II.   PERTINENT FACTS

In the interest of brevity and given the extraordinarily compressed timeline for Live Nation's response that Plaintiffs engineered with their midnight filing, Live Nation limits this section of its brief to the procedural facts most relevant to Plaintiffs' requested expansion of the restraining order.

The Court issued its restraining order at 9:17 a.m. on Monday, December 20. Dkt. 31, hereinafter the "Order." The restraining order prohibited Live Nation from "***promoting and selling tickets on Ticketmaster.com for Twenty-Nine Palms' music event under the name Coachella Day One 22***." *Id.*, p. 10 (emphasis added). The Court also enjoined the Tribe's web hosting provider Bluehost from "hosting content on CoachellaCrossroads.com that promotes Twenty-Nine Palms' music event under the name Coachella Day One 22." Dkt. 31, p. 10. It is undisputed that Live Nation is not related to Bluehost and has no control over the Tribe's website. The Court ruled that Plaintiffs "are *not* likely to establish that Twenty-Nine Palms directly infringed on the Coachella Marks by promoting general music events at Coachella Crossroads." *Id.*, p. 8 (emphasis in original).

Live Nation filed its Notice of Compliance at 5:15 p.m. that same day. Dkt. 32. As set forth in that Notice, Ticketmaster listings for the New Year's event at

issue identify the event as "Day One 22." To the best of Live Nation's knowledge, the name "Coachella Day One 22" no longer appears on the Ticketmaster platform. Dkt. 32, p. 1. Live Nation also stipulated that the Court's Order could be converted to a preliminary injunction without further delay or briefing. *Id.* Plaintiffs do not dispute that Live Nation is in compliance with the Court's order.

At 4:26 p.m. on December 20, Plaintiffs' counsel wrote to Live Nation's counsel, asserting that after Bluehost removed the Tribe's website the Tribe had moved the website to a new server and re-posted the site with the name "Coachella Day One 22" still displayed. Varas Decl., ¶ 4; Dkt. 34-6. On this basis, Plaintiffs demanded that Live Nation "immediately cease and desist from providing any support for Coachella Day One 22 unless and until Twenty-Nine Palms changes the name of the event [on the website] so that it no longer infringes on the COACHELLA Marks. In particular, Coachella demands that your client immediately cease selling tickets and providing ticket services for Coachella Day One 22, including for tickets already sold." *Id*. Plaintiffs' letter did not mention the Tribe's billboards (which are owned and operated by third parties unrelated to Live Nation whom Plaintiffs chose not to sue), nor did the letter cite any authority supporting Plaintiffs' demands.

At approximately 4:38 p.m. on December 21, Plaintiffs' counsel notified Live Nation's counsel that Plaintiffs intended to file another ex parte application seeking modification of the restraining order on the grounds that the Tribe "continues to infringe and has intentionally taken steps to frustrate the Court's order." Varas Decl., Ex. 1. The notice did not specify the alleged ongoing infringement or the specific relief Plaintiffs intended to request.[1] *Id*.

---

[1] Plaintiffs provided written notice of the injunctive language they intended to request at 9:01 p.m. last night.

1         At 7:46 p.m., Live Nation's counsel emailed Plaintiffs' counsel stating "we have been informed that although the tribe is not subject to the Court's order it has decided of its own volition to *change the way it is promoting the event, including changing the name on its website*. We understand the changes to the site are expected to be live by noon tomorrow." Varas Decl., Ex. 1 (emphasis added). In a follow-up exchange between 8:00 p.m. and 8:51 p.m., Live Nation's counsel also informed Plaintiffs' counsel that Live Nation would have more information on Wednesday the 22nd, but that Live Nation understood "the changes are not limited to the website." *Id*.

Plaintiffs' counsel asked no further questions about the forthcoming changes. Instead, Plaintiffs waited until 11:53 p.m. and then filed anyway, seeking emergency relief against Live Nation based on the continuing appearance of "Coachella Day One 22" on: 1) the Tribe's website; and 2) billboards that are not at issue in the Court's restraining order and are owned by third parties that are not parties to this suit, including Lamar Advertising Company. *See* Dkt. 34, p. 5.

As of this filing, to Live Nation's knowledge the Tribe had removed the name "Coachella Day One 22" from its website, only using the word Coachella to identify the Coachella Crossroads venue. *See* Varas Decl., Ex. 2. A representative screen capture of the Tribe's website as of this filing is attached to the Varas Decl. and reproduced below for reference.

//
//
//
//
//
//
//
//



And even though the Tribe is not subject to this Court's jurisdiction, the billboards are not relevant to the existing restraining order and Plaintiffs elected not

to seek relief against the third parties who own the billboards, Live Nation is also informed that the Tribe began working – independently, and without obligation to do so – to remove the word "Coachella" from the name of the event on its billboards *before* Plaintiffs disclosed that they were seeking further emergency relief based on the billboards. *Id*., ¶ 6.

### III.   ARGUMENT

#### A.   Plaintiffs Knew Before They Filed That This Is Not An Emergency, but Chose to Deceive the Court to Justify Their Continued Ex Parte Abuse.

This Court's Standing Order states: "Ex parte applications are solely for extraordinary relief and should be used with discretion. Sanctions may be imposed for misuse of ex parte applications." Dkt. 17 at 5-6, *citing Mission Power Engineering Co. v. Continental Casualty Co.*, 883 F. Supp. 488 (C.D. Cal. 1995).

Plaintiffs knew before they filed that there was no justification for a midnight ex parte seeking further relief against the Tribe's ticket agent. There is no dispute that Live Nation is fully in compliance with the Court's Order. And even though Live Nation has no control over the sovereign Tribe's website or other marketing materials, Live Nation nevertheless acted in good faith by notifying Plaintiffs one day after Plaintiffs' December 20 letter that Live Nation had become aware the Tribe was in the process of changing the event name on the Tribe's website, with changes expected to be live by noon today. *See* Varas Decl., Ex. 1.

Rather than wait twelve hours (or less) for the Tribe to implement the changes, Plaintiffs filed just before midnight, abusing the ex parte process to maximize the burden on the Tribe's ticketing agent. Plaintiffs *concealed* their knowledge of the imminent changes to the Tribe's website from the Court. Worse than that, they *falsely represented* to the Court that Live Nation never responded to their December 20 complaint about the Tribe's website. And even after Live Nation had informed Plaintiffs that it understood the Tribe's changes would not be limited

to the website, Plaintiffs did not disclose to Live Nation that they intended to raise the Tribe's third-party billboards as a basis for further emergency relief against Live Nation.

Plaintiffs' conduct over the past twenty-two hours makes a mockery of the Court's emergency procedures. There is no emergency of any kind here, much less an emergency justifying further ex parte relief against Live Nation. The entire factual basis for this ex parte was moot before Plaintiffs filed, and Plaintiffs knew it. Their goal with this midnight filing is not to vindicate rights. Their goal is harass Live Nation with incessant emergency motion practice even if it means concealing material facts and lying to the Court about the parties' correspondence.

Live Nation respectfully submits that the Court should deny Plaintiffs' ex parte in full on the grounds that: 1) Plaintiffs have not alleged any continuing infringement on the Ticketmaster platform, which is the only instrumentality in this dispute under Live Nation's control; 2) Live Nation has no control over the Tribe's website or billboards and 3) the Tribe's website – which the Tribe operates in its capacity as a sovereign entity – is not inconsistent with the Court's order in any event.

Live Nation also respectfully requests that the Court take whatever further action it deems proper to deter Plaintiffs from continuing to wield ex parte motion practice as a weapon to harass Live Nation and drain the Court's resources as this case proceeds through the holidays.

### B. Plaintiffs Offer No Justification For Their Impermissibly Vague Modification of the Court's Order.

As discussed above, Live Nation is fully in compliance with the Court's Order. Plaintiffs do not dispute Live Nation's compliance, but now seek to expand the Order to enjoin Live Nation from selling or even honoring tickets to the Tribe's event so long as Plaintiffs believe the Tribe is engaged in "any infringing activity" in connection with the event.

The problems with this request are evident. First of all, the proposed order is impermissibly vague. *See* Dkt. 34-1. Plaintiffs' proposed order contains no explanation or definition of when or how the endpoint of the injunction – that is, the point at which the event "no longer infringes" Plaintiffs' marks – will be reached. The Court's Order found that Plaintiffs were likely to establish that the Tribe "directly infringed on the Coachella Marks **by promoting Coachella Day One 22**," but also found that Plaintiffs were not likely to establish that the Tribe infringed by promoting music events at Coachella Crossroads. Plaintiffs apparently seek some magic point between promotion of "Coachella Day One 22" and promoting events at Coachella Crossroads at which infringement will cease, but they do not (and cannot) specify what that point is. In the absence of that specificity, the proposed injunction is improper.

Federal Rule of Civil Procedure 65 requires that "[e]very order granting an injunction and every restraining order must … describe in reasonable detail – and not by referring to the complaint or other document – the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1)(C). As the Ninth Circuit has noted, "[O]ne basic principle built into Rule 65 is that those against whom an injunction is issued should receive fair and precisely drawn notice of what the injunction actually prohibits." *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1086-87 (9th Cir. 2004) (citations omitted). Plaintiffs' proposed order violates this basic principle, and the Ninth Circuit has not hesitated to vacate or order modified similarly vague injunctions. *See, e.g., Columbia Pictures Industries, Inc. v. Fung*, 710 F.3d 1020, 1047-48 (9th Cir. 2013) (injunction's use of the vaguely defined phrase "infringement-related terms" was "too vague to provide the notice required by Rule 65(d)"); *see also, e.g., Hellbusch v. Lane*, Case No. SACV 13-1973-JLS (DJMx), 2014 WL 12577141, at *1 (C.D. Cal. Apr. 7, 2014) (denying motion for default judgment enjoining defendant from infringing plaintiff's copyright, noting the

requested injunction was "vague and asserts no *specific* harm to be enjoined") (citation omitted).

Second, although it is not couched as such, Plaintiffs' application effectively seeks expansion of the Court's Order. A request to modify an injunction requires that "the moving party demonstrate[] a significant change in facts or law," that is, "one that pertains to the underlying basis" for the injunction. *Meggitt (Orange County), Inc. v. Nie*, Case No. SACV 13-0239-DOC (DFMx), 2014 WL 12573353, at *1 (C.D. Cal. Nov. 3, 2014); *see generally Sharp v. Weston*, 233 F.3d 1166, 1170 (9th Cir. 2000) ("A party seeking modification or dissolution of an injunction bears the burden of establishing that a significant change in facts or law warrants revision or dissolution of the injunction.").

Plaintiffs have demonstrated no such change here that would warrant expanding the Court's injunction to cover additional "infringing activity," even if that activity were properly defined. The only change pointed to by Plaintiffs is the fact that the Tribe changed its server, but Plaintiffs offer no authority at all to support their argument that a sovereign tribe moving a website would have warranted expansion of the restraining order against Live Nation even *before* the Tribe's changes, much less now. At most, Plaintiffs "identified a change in factual circumstances that is significant to them, [but] they have not identified changed circumstances that bear on the propriety" of the existing injunction, particularly now that nothing on the sovereign Tribe's website is even arguably inconsistent with the plain language of the Court's restraining order. *Federal Trade Commission v. Kutzner*, Case. No. CV 16-00999-BRO (AFMx), 2017 WL 5230565, at *4 (C.D. Cal. June 19, 2017) (denying motion to modify preliminary injunction). Plaintiffs' request to expand the Court's Order should be denied on this basis alone.

C. **Plaintiffs Fail to Justify A Mandatory Injunction Ordering Live Nation to Invalidate Tickets**

Plaintiffs' request for an expanded restraining order enjoining Live Nation

from "providing ticketing authentication or validation services (including for <u>tickets already sold</u>)" so long as the Tribe is engaged in any conduct Plaintiffs consider "infringing" (Dkt. 34, p. 8 (emphasis added)) is a plain request for a mandatory injunction that would have the effect of invalidating all tickets Live Nation's ticketing entity Ticketmaster LLC has sold.  Were the Court to enjoin Live Nation from validating existing tickets at the event, consumers who already purchased tickets would show up on New Year's Eve only to find that their tickets do not work.  Plaintiffs' proposed expansion is therefore the functional equivalent of a product recall, which is treated as a "mandatory" injunction in this Circuit and subject to a heightened standard of scrutiny.  *See Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009).

Unlike prohibitory injunctions, such as the Court's December 20 order, mandatory injunctions are "particularly disfavored" and "are not granted unless extreme or very serious damage will result." *Id.* (citations omitted).  To obtain a mandatory injunction, Plaintiffs bear the burden on the four preliminary injunction elements, as well as three additional factors: "(1) the willful or intentional infringement by the defendant; (2) whether the risk of confusion to the public and injury to the trademark owner is greater than the burden of the recall to the defendant; and (3) substantial risk of danger to the public due to the defendant's infringing activity." *Id.*

Plaintiffs ignore this critical standard altogether in their new ex parte, and cite no authority whatsoever in support of their proposed mandatory injunction.  They fail to satisfy their burden on that basis alone.  But in any event, Plaintiffs cannot meet their burden as to the irreparable harm, balance of equities, or public interest injunctive relief elements, nor as to any of the three mandatory injunction factors.

### 1. The Proposed Mandatory Injunction Would Not Remedy Any "Extreme" Irreparable Harm

Plaintiffs fail to show that they will suffer "extreme" irreparable harm if the

Order is not expanded to order Live Nation to invalidate already-purchased tickets. *Marlyn Nutraceuticals*, 571 F.3d at 879 (requiring showing of "extreme or very serious damage" for mandatory injunctions). In its order, the Court found that Live Nation's promotion and sale of tickets "under the name Coachella Day One 22" would harm Plaintiffs by creating "a likelihood of confusion" among consumers. Dkt. 31, pp. 8-9. Live Nation is not using that name on the Ticketmaster platform – a fact Plaintiffs do not dispute. Dkt. 32. Thus, any harm identified by the Court that was caused by Live Nation's conduct has already ceased and cannot be redressed by injunctive relief. *See Guadalupe Police Officer's Ass'n v. City of Guadalupe*, No. CV 10-8061 GAF (FFMx), 2011 WL 13217671, at *4 (C.D. Cal. Mar. 29, 2011) ("An injunction . . . cannot redress a past harm; only damages can.") (emphasis in original).

Further, "[i]njunctive relief must be tailored to remedy the specific harm alleged." *Nat. Res. Def. Council, Inc. v. Winter*, 508 F.3d 885, 886 (9th Cir. 2007). Plaintiffs have not even attempted to show "extreme" harm in their new ex parte for a mandatory injunction. To the contrary, they blithely insist that the Court order Live Nation to invalidate all tickets sold to the event so long as the Tribe engages in any conduct that Plaintiffs consider "infringing." Last week it was listings on ticketmaster.com. Today it is billboards. Tomorrow it will be something else. None of it amounts to the type of "extreme," prospective harm required for a mandatory injunction, nor can Plaintiffs show that that *invalidating consumers' tickets* would remedy such unspecified future harm. Thus, Plaintiffs' proposed expansion of the order would be improper. *See Acolyte Techs. Corp. v. Jeja Int'l Corp.*, No. 11 CV 2012 MMA CAB, 2011 WL 4837490, at *3 (S.D. Cal. Oct. 12, 2011) ("[A]bsent any indication of identifiable impending irreparable harm that **would be averted by the proposed amendment**, the Court concludes Plaintiff has not demonstrated good cause to amend the TRO.") (emphasis added).

### 2. The Balance of Equities Favors Live Nation

Live Nation would suffer serious harm if it were ordered to invalidate its customers' tickets. It stands to reason that customers who show up to the Tribe's event only to find that their tickets do not work will inevitably blame Live Nation and generate negative attention in the press and on social media, thus harming Live Nation's reputation and its relationships with its customers. Given that Plaintiffs' proposed expansion of the order would not remedy any prospective (or past) harm to Plaintiffs, the balance of equities tips sharply in Live Nation's favor. *See, e.g., Trust Co. Bank v. Putman Pub. Group Inc.*, No. CV 87 07393 AHS(JRX), 1988 WL 62755, at *3 (C.D. Cal. Jan. 4, 1988) (defendant's "goodwill with wholesalers and retailers would be damaged and the injunction could have an adverse effect upon [defendant's] ability to obtain shelf space at bookstores, negatively impacting the sale of other [ ] books for months to come").

### 3. The Public Interest Would Be Disserved by the Expansion

If Live Nation is ordered to invalidate already-purchased tickets, the public will suffer serious harm in the form of wasted travel, unnecessary expense and the disruption of their plans for one of the biggest holidays of the year. Plaintiffs cannot justify inflicting such financial and emotional harm on innocent consumers, particularly when they cannot point to anything currently in the marketplace that is inconsistent with the Court's existing order.

### 4. The Mandatory Injunction Factors Favor Live Nation

All three mandatory injunction factors weigh in Live Nation's favor. *First*, Live Nation's full compliance with the Order shows that Live Nation is not willfully infringing Plaintiffs' marks—contributorily or otherwise. Dkt. 32. *Second*, as discussed above, the balance of harms tips sharply in Live Nation's favor. *Third*, there is no "substantial risk to the public" that could justify ordering Live Nation to invalidate already-purchased tickets. *Marlyn Nutraceuticals*, 571 F.3d at 880. The "substantial risk of danger to the public" refers to "dangers to public health, not

merely danger of confusion or other less serious risks," and there are no such dangers present here. *See Direct Source Seafood LLC v. Aqua Star (USA) Corp.*, No. C16-407RSL, 2016 WL 8738668, at *2 (W.D. Wash. June 30, 2016); *see also Marlyn Nutraceuticals*, 571 F.3d at 880 ("the record does not support the existence of a public health risk necessary to invoke the interlocutory remedy of product recall").

Accordingly, the Court should deny Plaintiffs' request to expand the Order to include a mandatory injunction. *See Diaz v. Bautista*, No. 2:10-cv-04690-JHN-JC, 2012 WL 13005556, at *6 (C.D. Cal. June 29, 2012) (no mandatory injunction even where infringement was intentional because plaintiff failed to make a showing on third factor).

### D. If the Court Grants Any Relief, it Should Order Plaintiffs to Post a Bond Commensurate with the Damage Any Expansion of the Restraining Order Would Inflict on Live Nation.

If the Court is inclined to grant Plaintiffs' new application, the Court should require posting of a bond consistent with the harm Live Nation faces. "The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The Ninth Circuit has "recognized that Rule 65(c) invests the district court 'with discretion as to the amount of security required, if any.'" *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003).

As discussed above, the cessation of ticket sales and forced invalidation of tickets already sold would inflict significant damage on Live Nation's reputation and sales. Considering the late filing by Plaintiffs, if the Court is inclined to grant their application, Live Nation requests that the Court designate a time for parties to submit simultaneous briefs and supporting evidence concerning the appropriate bond amount. *See, e.g., Advanced Transit Dynamics, Inc. v. Ridge Corp.*, Case No.

CV 15-1877 BRO (MANx), 2015 WL 12516692, at *29 (C.D. Cal. Aug. 24, 2015) (requiring the parties to file briefs and supporting evidence regarding the bond within seven days).  In the alternative, Live Nation requests that the Court set a bond that is "subject to modification if the evidence later shows that [the amount it sets] is insufficient to pay the costs and damages of Defendants, should they be found to have been wrongfully enjoined."  *See Creative Power Sols. v. Energy Servs. Grp.*, Case No. CV-21-01559-PHX-DLR, 2021 WL 4503455, at *2 (D. Ariz. Oct. 1, 2021).

### E. Request for Clarification and/or Modification of the Scheduling Order Regarding the Court's Order to Show Cause Why a Preliminary Injunction Should not Issue, in Light of Live Nation's Compliance and Plaintiffs' Constantly Moving Target.

The Court previously ordered the parties to submit briefing on why a preliminary injunction should not issue.  Dkt. 31.  The Court did not specify the scope of the preliminary injunction it would consider.  Live Nation previously stipulated that the Court's restraining order could be converted to a preliminary injunction, provided the Court agreed that Live Nation is in compliance.

In light of Plaintiffs' new ex parte application and its vague references to ongoing threats of injunctive relief against Live Nation so long as the Tribe engages in any conduct that Plaintiffs consider "infringing" regardless of the Court's prior orders, the third parties who own and operate the installations and any other mechanisms by which Plaintiffs may claim further infringement through other means over the coming days, Live Nation respectfully requests that when the Court rules on this ex parte it clarify: 1) if it is considering a preliminary injunction against Live Nation that is any broader in scope than the current restraining order; and if so 2) what additional issues if any the Court requires further briefing from Live Nation on.  Should the Court require further briefing regarding a potential preliminary injunction, Live Nation also respectfully requests additional time to prepare its brief

so that it can be as responsive as possible to any issues that remain of concern for the Court.

DATED: December 22, 2021        Respectfully submitted,

KILPATRICK TOWNSEND & STOCKTON LLP

By:   /s/ Christopher T. Varas
       CHRISTOPHER T. VARAS
       LARRY W. MCFARLAND

Attorneys for Defendant Live Nation Entertainment, Inc.