KILPATRICK TOWNSEND & STOCKTON LLP
Christopher T. Varas (State Bar No. 257080)
CVaras@kilpatricktownsend.com
Larry W. McFarland (State Bar No. 129668)
LMcFarland@kilpatricktownsend.com
1801 Century Park East, Suite 2300
Los Angeles, CA 90067
Telephone:  310-248-3830
Facsimile:   310-860-0363

Attorneys for Defendant Live Nation Entertainment, Inc.

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| COACHELLA MUSIC FESTIVAL, LLC ET AL,<br><br>            Plaintiff,<br><br>      v.<br><br>LIVE NATION ENTERTAINMENT, INC. ET AL,<br><br>            Defendant. | Case No. 2:21-cv-09631-RGK-GJS<br><br>**DEFENDANT LIVE NATION ENTERTAINMENT INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS UNDER FED. R. CIV. P. 12(B)(7)**<br><br>Date:    March 21, 2022<br>Time:    9:00 a.m.<br>Ctrm.:   850, 8th Floor<br>Judge:  Hon. R. Gary Klausner<br><br>Complaint Filed:  December 13, 2021<br>Trial Date:  TBD |

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ....................................................................................... 1

II.  FACTS ........................................................................................................ 3

    A.  Relevant Allegations in the Complaint ............................................. 3

    B.  The Court's Rule 19 Decision in the TRO Context .......................... 4

    C.  The Interests the Tribe Claims Would Be Impaired ......................... 4

        1.  The Tribe's Interest in its Co-Existence
            Agreement with AEG ............................................................. 4

        2.  The Tribe's Interest in its Contract with Live
            Nation's Subsidiary Ticketmaster, L.L.C. ............................. 5

        3.  The Tribe's Interest in its Sovereignty ................................. 5

        4.  The Tribe's Ownership Interest in the
            COACHELLA CROSSROADS Mark ................................... 6

        5.  The Tribe's Interest in Referring to its
            Coachella Property ................................................................ 7

    D.  The Conflict of Interest Created by the Tribe's
        Indemnification Agreement with Ticketmaster ................................. 7

III.  ARGUMENT ............................................................................................. 8

    A.  Standard of Review Under Rule 19 .................................................. 8

    B.  The Tribe is a Required Party ........................................................... 9

    C.  Live Nation Cannot Adequately Represent the
        Tribe's Interests .............................................................................. 12

    D.  The Rule 19(b) Factors Favor Dismissal with
        Prejudice .......................................................................................... 14

IV.  CONCLUSION ....................................................................................... 16

# TABLE OF AUTHORITIES

Page

**Cases**

*Advanced Dynamic Interfaces, L.L.C. v. Aderas Inc.*,
No. 12-CV-963 (GMS), 2013 WL 6989428 (D. Del. Jan. 11,
2013) ........................................................................................................ 13

*Allen v. Gold Country Casino*,
464 F.3d 1044 (9th Cir. 2006) ................................................................ 11

*Am. Greyhound Racing, Inc. v. Hull*,
305 F.3d 1015 (9th Cir. 2002) ......................................................... 10, 13

*Brosnahan v. Pozgay*,
No. 06-CV-2195-DMS (NLS), 2007 WL 173969 (S.D. Cal. Jan.
17, 2007) ............................................................................................ 11, 12

*Cemex, Inc. v. County of Los Angeles*,
92 F. App'x 457 (9th Cir. 2004) ............................................................. 14

*Corinthian Colls., Inc. v. Carew Int'l, Inc.*,
No. SACV-90424-AGR (Zx), 2009 WL 10674338 (C.D. Cal.
Sept. 4, 2009) .......................................................................................... 14

*Dawavendewa v. Salt River Project Agr. Improvement & Power
Dist.*,
276 F.3d 1150 (9th Cir. 2002) .................................................................. 9

*Dine Citizens Against Ruining Our Env't v. Bureau of Indian Affs.*,
932 F.3d 843 (9th Cir. 2019) ............................................................ passim

*E.W. Tea Co., LLC v. Puri*,
No. 3:11-CV-01358-HZ, 2021 WL 2209115 (D. Or. June 1, 2021) ............. 10

*Edwards v. Wilshire Insurance Co.*,
CV 15-00793-RGK (SSx), 2015 WL 12645747 (C.D. Cal. Nov.
13, 2015) .................................................................................................. 13

*Egrandbuy, Inc. v. LEGO Juris A/S*,
No. CV 16-05059 SJO (Ex), 2016 WL 11744380 (C.D. Cal. Nov.
16, 2016) .................................................................................................. 11

*Fid. Nat'l Title Ins. Co. v. Terra Mktg., Inc.*,
No. CV 15-02641-AB (ASx), 2015 WL 12765114 (C.D. Cal.
Sept. 2, 2015) .................................................................................... 10, 15

*Gill v. Momentum Dev., LLC*,
No. CV 14-4799-GHK (VBKx), 2015 WL 12830391 (C.D. Cal.
Jan. 12, 2015) .......................................................................................... 10

*Jamul Action Comm. v. Simermeyer*,
974 F.3d 984 (9th Cir. 2020) .................................................................. 14

# TABLE OF AUTHORITIES
(continued)

Page

*Kescoli v. Babbitt*,
  101 F.3d 1304 (9th Cir. 1996) .................................................................. 11, 16

*Kourtis v. Cameron*,
  419 F.3d 989 (9th Cir. 2005),
  *abrogated on other grounds by Taylor v. Sturgell*,
  553 U.S. 880 (2008) ...................................................................................... 12

*Leadsinger, Inc. v. BMG Music Publ'g*,
  512 F.3d 522 (9th Cir. 2008) .......................................................................... 14

*Makah Indian Tribe v. Verity*,
  910 F.2d 555 (9th Cir. 1990) .......................................................................... 16

*Northrop Corp. v. McDonnell Douglas Corp.*,
  705 F.2d 1030 (9th Cir. 1983) ...................................................................... 9, 10

*Pit River Home and Agric. Coop. Ass'n v. United States*,
  30 F.3d 1088 (9th Cir. 1994) .......................................................................... 16

*Republic of Philippines v. Pimentel*,
  553 U.S. 851 (2008) ........................................................................................ 15

*Shermoen v. United States*,
  982 F.2d 1312 (9th Cir. 1992) .............................................................. 12, 13, 14

*Ward v. Apple Inc.*,
  791 F.3d 1041 (9th Cir. 2015) ........................................................................... 4

*White v. Univ. of Cal.*,
  765 F.3d 1010 (9th Cir. 2014) ............................................................................ 9

*Wilbur v. Locke*,
  423 F.3d 1101 (9th Cir. 2005),
  *abrogated on other grounds by Levin v. Com. Energy, Inc.*,
  560 U.S. 413 (2010) .......................................................................................... 9

**Statutes**

15 U.S.C. § 1114 ................................................................................................. 10

**Rules & Regulations**

Fed. R. Civ. P. 12(b)(7) ........................................................................................ 1

Fed. R. Civ. P. 19 ......................................................................................... *passim*

Fed. R. Civ. P. 19(a) ................................................................................ 1, 4, 15

Fed. R. Civ. P. 19(a)(1) .......................................................................... 8, 14

Fed. R. Civ. P. 19(a)(1)(B) ........................................................ 4, 10, 11, 12

# TABLE OF AUTHORITIES
(continued)

<u>Page</u>

Fed. R. Civ. P. 19(a)(1)(B)(i) ..................................................................2, 8

Fed. R. Civ. P. 19(b) .........................................................................1, 8, 9, 14

Fed. R. Civ. P. 19(b)(1) ..................................................................................9

Fed. R. Civ. P. 19(b)(2) ..................................................................................9

Fed. R. Civ. P. 19(b)(3) ..................................................................................9

Fed. R. Civ. P. 19(b)(4) ..................................................................................9

## I.      INTRODUCTION

The Court should dismiss this trademark infringement case pursuant to Federal Rules of Civil Procedure 12(b)(7) and 19(b) because a required party, the Twenty-Nine Palms Band of Mission Indians (the "Tribe"), is entitled to sovereign immunity and cannot be joined.

This matter is, at its core, not a dispute between Plaintiffs (also referred to as "AEG") and Live Nation. Indeed, AEG's ultimate goal in filing this lawsuit is to prevent the Tribe from using the name of its ancestral land in its marketing and promotion of the Tribe's events taking place at the Tribe's Coachella Crossroads venue in the Coachella Valley. Because sovereign immunity prevents AEG from suing the Tribe directly, AEG has instead filed this lawsuit as a transparent attempt to end-run the protections afforded to the Tribe by longstanding federal law.

"[T]here is a wall of circuit authority in favor of dismissing actions in which a [required] party cannot be joined due to tribal sovereign immunity—virtually all the cases to consider the question appear to dismiss under Rule 19 . . . if the absent parties are Indian tribes invested with sovereign immunity." *Dine Citizens Against Ruining Our Env't v. Bureau of Indian Affs*., 932 F.3d 843, 857 (9th Cir. 2019). Thus, tribal sovereign immunity cases in the Ninth Circuit turn on whether the absent party is "required" under Rule 19(a).

Here, the Tribe is a required party because—in its concurrently-filed declaration—it claims at least five legally protected interests that would be impaired by the continuation of this litigation in its absence. First, the Tribe explains that it is a party to a contract with Plaintiffs' parent company Anschutz Entertainment Group ("AEG"), pursuant to which AEG consented to the Tribe's use of the COACHELLA CROSSROADS mark. Because consent is a complete defense to trademark infringement, Plaintiffs' claim that the COACHELLA CROSSROADS mark is infringing will necessarily require the interpretation of that contract.

Second, the Tribe claims a substantial commercial interest in its contract with

Ticketmaster, L.L.C. ("Ticketmaster"), a subsidiary of Live Nation, under which Ticketmaster is the Tribe's exclusive ticket seller for five years. Plaintiffs' requested injunction prohibiting Live Nation's subsidiaries from selling tickets to events at the Coachella Crossroads venue would rob the Tribe of the bargained-for benefits of that agreement.

Third, the Tribe claims an interest in its sovereign immunity that may be impaired by an award of damages against Live Nation. A key purpose of sovereign immunity is to protect tribes from damages claims, but due to an indemnity agreement between Ticketmaster and the Tribe, a monetary award may work an end-run around the Tribe's sovereign immunity.

Fourth, the Tribe claims an intellectual property interest in its COACHELLA CROSSROADS mark. This case will decide whether the Tribe has a legal right to use—and exploit—its trademark.

Fifth, the Tribe claims a historical and cultural interest in referring to Coachella, California, and locations within the Coachella Valley, by name. The United States confined the Tribe to a reservation in Coachella more than a century ago. Yet Plaintiffs seek to enjoin all persons "working in concert with" the Tribe from using the term "Coachella" in virtually any capacity.

Each of these interests independently requires a finding that the Tribe is "required" under Rule 19(a)(1)(B)(i). And for at least three reasons, Live Nation cannot adequately defend any of these interests. First, the Tribe's indemnity agreement with Ticketmaster creates a conflict of interest between Live Nation and the Tribe. Second, only the Tribe has key evidence concerning its use and ownership of the COACHELLA CROSSROADS mark, which Live Nation cannot acquire through a subpoena. And third, Live Nation does not share most of the Tribe's claimed interests, nor does Live Nation have an interest in defending against the incredibly broad scope of Plaintiffs' requested injunction, which would affect every person doing business with the Tribe.

1       For all of these reasons, and those discussed below, the Court should dismiss

2   Plaintiffs' claims with prejudice.

3   **II.   FACTS**

4       **A.   Relevant Allegations in the Complaint**

5       Plaintiffs allege that the Tribe has "intentionally" infringed Plaintiffs'

6   COACHELLA mark. Compl. ¶ 2. Plaintiffs allege at least two instances of

7   intentional trademark infringement: (1) the Tribe's naming of an event

8   COACHELLA DAY ONE 22; and (2) its naming of a venue COACHELLA

9   CROSSROADS. *Id*. ¶¶ 2–3. Plaintiffs allege that the Tribe's "adoption and use of

10  COACHELLA CROSSROADS . . . was done with actual knowledge of [Plaintiffs']

11  COACHELLA Marks," and that the Tribe adopted "COACHELLA CROSSROADS

12  . . . intentionally because [it is] similar to [Plaintiffs'] COACHELLA Marks." *Id*. ¶¶

13  78–79.

14      Despite accusing the Tribe of intentional trademark infringement, Plaintiffs

15  did not name the Tribe as a party due to the Tribe's sovereign immunity. Compl. ¶ 2

16  n.2, ¶ 8. Instead, Plaintiffs named Live Nation, Bluehost Inc., and several Doe

17  defendants, asserting claims against them for contributory trademark infringement

18  and unfair competition under federal and California law. *See id*. ¶¶ 103–160.

19      In their "Request for Relief," Plaintiffs seek monetary relief in the form of

20  "damages for trademark infringement and unfair competition and that these damages

21  be trebled," "all profits resulting from Defendants' contributory infringement,"

22  "corrective advertising" costs, interest, and the costs of the action. Compl. at 27–28.

23  Plaintiffs also seek a permanent injunction against "Defendants and their agents,

24  servants, employees, successors and assigns, and all other persons acting in concert

25  with or in conspiracy with or affiliated with Defendants or [*the Tribe*]," from

26  "engaging in, or contribut[ing] to, . . . advertising, promoting, marketing,

27  franchising, selling and offering for sale any goods or services in connection with

28  the COACHELLA Marks or *any similar mark*, including but not limited to

LIVE NATION'S MEMO ISO MOTION TO DISMISS                                    -3-
UNDER FED. R. CIV. P. 12(B)(7)

COACHELLA CROSSROADS." *Id*. (emphasis added).

### B. The Court's Rule 19 Decision in the TRO Context

On December 13, 2021 Plaintiffs filed an ex parte application for a temporary restraining order. Dkt. 9. Responding to Plaintiffs' emergency application on December 15, Live Nation argued *inter alia* that the case would ultimately be dismissed under Rule 19 as the Tribe was a required party who could not be joined. Dkt. 21. The Tribe did not file any submissions on the issue, so Live Nation attempted to articulate the Tribe's potential interests that might be negatively affected by this litigation. *See id*.

In a reply brief that the Court later struck, Plaintiffs contended that "*no infringer* is a necessary party under Rule 19(a)." Dkt. 22 at 2 (emphasis added). In its December 20, 2022 order, the Court rejected Plaintiffs' argument, quoting the Ninth Circuit's holding that "there may be circumstances in which an alleged joint tortfeasor has particular interests that cannot be protected in a legal action unless it is joined under Rule 19(a)(1)(B)." Dkt. 31 (the "Order") at 4 (quoting *Ward v. Apple Inc*., 791 F.3d 1041, 1048 (9th Cir. 2015)). Nonetheless, the Court found that Live Nation failed to explain "*how* proceeding with this action would impair" the Tribe, and that Live Nation would "adequately represent[]" the Tribe's interests. *Id*. at 5 (emphasis in original). Live Nation is now in position to explain the "how."

### C. The Interests the Tribe Claims Would Be Impaired

Through the Declarations of Darrell Mike ("Mike Decl.") and Lisa Martens ("Martens Decl.") filed with this motion, the Tribe claims five interests that may be impaired if this action continues—interests Live Nation was not in position to articulate when it responded to Plaintiffs' *ex parte* TRO application.

#### 1. The Tribe's Interest in its Co-Existence Agreement with AEG

The Tribe claims to be a party to a contract with AEG, pursuant to which AEG "agreed" that it "would not object to the [Tribe's] use of [COACHELLA

CROSSROADS] as long as the Tribe's use of the mark did not incorporate any of the Coachella Music Festival logos." Martens Decl. ¶ 3. AEG also agreed not to "object to the 10,000 person concert venue that the Tribe was planning to build at the time using the 'COACHELLA CROSSROADS' mark." *Id*. AEG's representative told the Tribe's representative that AEG "did not see the need to put this oral agreement into writing." *Id*.

Plaintiffs' allegation that the Tribe's use of the COACHELLA CROSSROADS mark is "unauthorized" and constitutes trademark infringement" contradicts the terms of the oral agreement between AEG and the Tribe and the subsequent confirming conduct of both AEG and the Tribe, per the testimony of Ms. Martens and Mr. Mike. Compl. ¶ 99; Martens Decl. ¶ 3; Mike Decl. ¶¶ 7-10. The Tribe therefore "has a vested interest" in the validity and interpretation of its oral co-existence agreement with Plaintiffs' parent company, AEG. Mike Decl. ¶ 12.

## 2.    The Tribe's Interest in its Contract with Live Nation's Subsidiary Ticketmaster, L.L.C.

The Tribe and Live Nation's subsidiary Ticketmaster, L.L.C. ("Ticketmaster") "have an agreement in which Ticketmaster is the exclusive ticket seller for events held by the Tribe at the Coachella Crossroads venue for five years" including at the COACHELLA CROSSROADS venue. Mike Decl. ¶ 15. Plaintiffs seek an order requiring Ticketmaster—as a Live Nation subsidiary—to "cease[] all sales of tickets for . . . events at COACHELLA CROSSROADS." Compl. ¶¶ 92–93. If Ticketmaster is enjoined from selling tickets to Coachella Crossroads events, the Tribe will be unable to enjoy the bargained for benefits of this agreement. Mike Decl. ¶ 15.

## 3.    The Tribe's Interest in its Sovereignty

The Tribe claims an interest in its sovereignty, having established various "business enterprises and governmental operations on its sovereign lands." Mike Decl. ¶ 7. This lawsuit threatens the Tribe's sovereign interests. As Mr. Mike

1   explains in his declaration, the Tribe has agreed to indemnification terms with

2   Ticketmaster, under which the "Tribe could potentially be responsible for

3   indemnifying Live Nation for third party claims arising from the Tribe's

4   infringement of another's trademarks and/or other intellectual property." Mike Decl.

5   ¶ 17. Accordingly, the Tribe may be exposed to financial harm in the event Live

6   Nation does not prevail in this lawsuit. In other words, the lawsuit is effectively an

7   end run around sovereign immunity, to which the Tribe is entitled by longstanding

8   precedent. *Id*. ¶ 19.

9           **4.      The Tribe's Ownership Interest in the COACHELLA**

10                    **CROSSROADS Mark**

11          "The Tribe claims the right to name its venue Coachella Crossroads and to

12   hold events under that name. The Tribe also claims rights to the ownership of the

13   mark Coachella Crossroads, which it has the right to license to others." Mike Decl. ¶

14   20. By their Complaint, Plaintiffs seek to enjoin Defendants and all persons "acting

15   in concert with or in conspiracy with *or affiliated with* Defendants or [*the Tribe*]"

16   from using the COACHELLA CROSSROADS mark. Compl. at 27 ¶ 4. This broad

17   requested relief would have a dramatic impact on the Tribe's interest in a mark that

18   reflects the Tribe's long history in the Coachella Valley—a history that pre-dates

19   Plaintiffs by generations.

20          Moreover, Plaintiffs' requested injunction "is extraordinarily broad and

21   effectively seeks to block any individual or company from working with the Tribe

22   as long as the Tribe continues to use the name Coachella Crossroads. Such an order

23   would have a direct impact on the Tribe's businesses, including with its third-party

24   vendors and clients." Mike Decl. ¶ 21. Indeed, Mr. Mike explains in his declaration

25   that "Plaintiffs threats to date have already caused a number of vendors to cease

26   doing business with the Tribe." *Id*. As just one example, Mr. Mike testifies that the

27   Tribe has a multi-year agreement with the billboard company Plaintiffs sought to

28   shoehorn into this lawsuit in their *ex parte* application to modify the Court's original

restraining order. *Id*. ¶ 21; Dkt. 34. If the Court were to issue the injunctive relief Plaintiffs have requested, "the Tribe would lose the bargained for benefit of yet another contractual relationship." Mike Decl. ¶ 21.

### 5.    The Tribe's Interest in Referring to its Coachella Property

The Tribe also has a historical and cultural interest in referring to its property as "Coachella" and "Coachella Crossroads" not only because "it designates the location where the venue" and the Tribe's century-old reservation sit, but "also because it recognizes and honors the connection between the Tribe and the local community where the Tribe resides, the town of Coachella." Mike Decl. ¶ 20. Plaintiffs' requested injunction would be a veritable gun-to-the-head, forcing the Tribe to stop referring to its venue or property using "Coachella" lest it lose its ability to conduct business with third parties who would be subject to the Court's injunction. This would be precisely the invasion of the Tribe's critical business interests that Mr. Mike explains Plaintiffs threatened when Coachella Music Festival co-founder Mr. Tollett advised the Tribe that Plaintiffs intended to interfere with the Tribe's vendors in order to disrupt events at the Coachella Crossroads venue. Mike Decl. ¶ 13.

### D.    The Conflict of Interest Created by the Tribe's Indemnification Agreement with Ticketmaster

According to the Tribe, Live Nation cannot adequately represent the Tribe's interests concerning this lawsuit "for reasons of which the Court may be unaware." Mike Decl. ¶ 17. These include the fact that the Tribe has an indemnification agreement with Ticketmaster, under which the "Tribe could potentially be responsible for indemnifying Live Nation for third party claims arising from the Tribe's infringement of another's trademarks and/or other intellectual property." *Id*. The Tribe believes that as a result of its indemnification obligations, Live Nation may not be incentivized to zealously defend against a potential judgment that the Tribe directly infringed Plaintiffs' rights. *Id*. Accordingly, the Tribe also believes

that "Live Nation cannot adequately represent the Tribe's interests because Live Nation would not be as negatively affected by a judgment and permanent injunction in Plaintiffs' favor as the Tribe would be." *Id*. ¶ 18.

## III.   ARGUMENT

### A.   Standard of Review Under Rule 19

As this Court has explained, "[a] court may dismiss a case for failure to join an indispensable party under Rule 19." Order at 4. Determining whether the Tribe is indispensable involves three steps. First, the Court must determine whether the Tribe is a "required party" under Rule 19(a)(1). A party is "required" if it claims—as the Tribe has done in the Mike Declaration—"an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may . . . as a practical matter impair or impede the person's ability to protect the interest." Fed. R. Civ. P. 19(a)(1)(B)(i).

Second, the Court must determine whether the Tribe can feasibly be joined in the action. Here, there is no dispute that the Tribe is entitled to sovereign immunity and therefore cannot feasibly be joined. Third, the Court "must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed," considering the following Rule 19(b) factors:

"(1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;

(2) the extent to which any prejudice could be lessened or avoided by:

    (A) protective provisions in the judgment;

    (B) shaping the relief; or

    (C) other measures;

(3) whether a judgment rendered in the person's absence would be adequate; and

(4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder."

1     *Id.* at (b)(1)-(4).

2        But because this is a tribal sovereign immunity case, the third step of the

3 analysis is not necessary. In such cases, there may be "very little need for balancing

4 Rule 19(b) factors because immunity itself may be viewed as the compelling

5 factor." *Dine Citizens*, 932 F.3d at 857. Indeed, "virtually all the cases to consider"

6 the Rule 19(b) factors in tribal sovereign immunity cases "appear to dismiss under

7 Rule 19." *Id.*

8        Accordingly, the question of whether the Tribe has "an interest relating to the

9 subject of the action and is so situated that disposing of the action in [the Tribe's]

10 absence may . . . as a practical matter impair or impede the [Tribe's] ability to

11 protect the interest" is practically dispositive. *See id.* at 851, 857 ("[T]here is a wall

12 of circuit authority in favor of dismissing actions in which a [required] party cannot

13 be joined due to tribal sovereign immunity.").

14       **B.**     **The Tribe is a Required Party**

15        An absent party's claim of a protected interest is sufficient under Rule 19 so

16 long as it is not "patently frivolous." See *White v. Univ. of Cal.*, 765 F.3d 1010,

17 1027 (9th Cir. 2014). Here, the Tribe has claimed at least five non-frivolous interests

18 that may be impaired by the continuation of this action, none of which were before

19 the Court when it considered this issue in the TRO context. Each interest the Tribe

20 claims is independently sufficient to render the Tribe a "required" party now.

21        ***First***, the Tribe claims to be a party to a co-existence agreement with AEG.

22 The Ninth Circuit has repeatedly held that "all parties to a contract are necessary in

23 litigation seeking to 'decimate' that contract." *Wilbur v. Locke*, 423 F.3d 1101, 1114

24 (9th Cir. 2005) (finding that tribe was a required party), *abrogated on other grounds*

25 *by Levin v. Com. Energy, Inc.*, 560 U.S. 413 (2010); *see also Dawavendewa v. Salt*

26 *River Project Agr. Improvement & Power Dist.*, 276 F.3d 1150, 1157 (9th Cir.

27 2002) ("[A] party to a contract is necessary, and if not susceptible to joinder,

28 indispensable to litigation seeking to decimate that contract."); *Northrop Corp. v.*

1   *McDonnell Douglas Corp.*, 705 F.2d 1030, 1044 (9th Cir. 1983) ("[A]ll parties who

2   may be affected by a suit to set aside a contract must be present.").

3         There is no question that Plaintiffs will attempt to "decimate" or "set aside"

4   the co-existence agreement, as consent is a complete defense to trademark

5   infringement. 15 U.S.C. § 1114 (prohibiting use "without the consent of the

6   registrant"). At the least, Plaintiffs will attempt to litigate the scope of the agreement

7   and the intentions of the parties. District courts in this Circuit facing similar facts—

8   including in intellectual property cases—have found absent contractual parties

9   "required" under Rule 19(a)(1)(B). *See, e.g., E.W. Tea Co., LLC v. Puri*, No. 3:11-

10  CV-01358-HZ, 2021 WL 2209115, at *3 (D. Or. June 1, 2021) ("Thus, the relief

11  sought in this case will determine both the scope and validity of the contracts

12  between Plaintiff and the Trustees and whether Plaintiff's use of the YOGI Marks

13  pursuant to a license from one co-owner infringes on the rights of the other co-

14  owner."); *Fid. Nat'l Title Ins. Co. v. Terra Mktg., Inc.*, No. CV 15-02641-AB (ASx),

15  2015 WL 12765114, at *5 (C.D. Cal. Sept. 2, 2015) ("Determining the intent of the

16  parties to the purchase agreement is necessary to resolve the allegations in Plaintiff's

17  complaint, and the Lugos Brothers are not represented in this action. Consequently,

18  the Court's decision regarding the rights and duties of the purchase agreement 'may

19  impair and impede [the Lugos Brothers'] legally protected interest in this suit.'");

20  *Gill v. Momentum Dev., LLC*, No. CV 14-4799-GHK (VBKx), 2015 WL 12830391,

21  at *2 (C.D. Cal. Jan. 12, 2015) (party to copyright assignment agreement was

22  required where "the validity and enforceability of the contract" was at issue).

23        ***Second***, the Tribe claims a significant interest in its five-year contract with

24  Ticketmaster that may be impaired if the Court enjoins Live Nation's subsidiaries

25  from selling tickets to events at the Coachella Crossroads venue. The Ninth Circuit

26  has held that where the relief sought might render a commercial contract "less

27  valuable" to a tribe, the tribe is a required party. *Am. Greyhound Racing, Inc. v.*

28  *Hull*, 305 F.3d 1015, 1023 (9th Cir. 2002) ("[T]here can be no question that

LIVE NATION'S MEMO ISO MOTION TO DISMISS                                    -10-
UNDER FED. R. CIV. P. 12(B)(7)

1   automatic termination renders the compacts less valuable to the tribes. The interests

2   of the tribes in their compacts are impaired and, not being parties, the tribes cannot

3   defend those interests."); *see also Kescoli v. Babbitt*, 101 F.3d 1304, 1310 (9th Cir.

4   1996) ("Kescoli's action could affect the Navajo Nation's and the Hopi Tribe's

5   interests in their lease agreements and the ability to obtain the bargained-for

6   royalties and jobs.").

7        As Mr. Mike explains, the Tribe successfully bargained for five years of

8   ticket sales through Ticketmaster. Mike Decl. ¶ 15. But if Ticketmaster and all

9   others working with the Tribe are enjoined from selling tickets to events at the

10  Coachella Crossroads venue, the Tribe will be unable to realize the benefits of that

11  agreement.

12        ***Third***, the Tribe's interest in its own sovereignty may be impaired if the Court

13  were to enter a monetary judgment against Live Nation. Essentially, due to the

14  Tribe's indemnity agreement with Ticketmaster, a monetary judgment against Live

15  Nation could operate as an indirect monetary judgment against the Tribe, which

16  would offend the purpose of sovereign immunity. *See Allen v. Gold Country Casino*,

17  464 F.3d 1044, 1047 (9th Cir. 2006) (protection of "the sovereign Tribe's treasury"

18  is "one of the historic purposes of sovereign immunity in general"). Even outside of

19  sovereign immunity cases, an absent party is "required" under Rule 19(a)(1)(B)

20  where a "judgment against Defendant would make [that party] liable . . . to

21  indemnify Defendant without an opportunity to defend the merits" of the action.

22  *Brosnahan v. Pozgay*, No. 06-CV-2195-DMS (NLS), 2007 WL 173969, at *4 (S.D.

23  Cal. Jan. 17, 2007).

24        ***Fourth***, the Tribe's interest in its claimed COACHELLA CROSSROADS

25  mark may be impaired by a ruling that the mark infringes Plaintiffs' marks. As

26  another court in this District observed in *Egrandbuy, Inc. v. LEGO Juris A/S*, No.

27  CV 16-05059 SJO (Ex), 2016 WL 11744380 (C.D. Cal. Nov. 16, 2016) (Otero, J.),

28  an absent party claiming trademark rights in the allegedly infringing mark is

LIVE NATION'S MEMO ISO MOTION TO DISMISS                    -11-
UNDER FED. R. CIV. P. 12(B)(7)

required under Rule 19(a)(1)(B) because the action will necessarily determine whether that party "has a legal right to use its . . . mark in connection with the goods they sell and/or license." *Id*. at *5. In addition, here, Plaintiffs' requested permanent injunction prohibiting anyone from working with the Tribe in connection with the Coachella Crossroads venue would decimate the Tribe's ability to use, license, and otherwise capitalize on its claimed intellectual property.

*Fifth*, the Tribe's cultural and historical interest in referring to its property in Coachella, California—protected by the First Amendment—may be impaired by an injunction that would effectively prohibit the Tribe from conducting business with anyone while referring to its "Coachella Crossroads" venue or otherwise using the word "Coachella" in connection with activities occurring on Tribal land in Coachella, California. *See Dine Citizens*, 932 F.3d at 851 (determination of "legally protected interest" is "a practical one and fact specific").

Each of these five legally protected interests independently renders the Tribe a required party under Rule 19(a)(1)(B).

## C.    Live Nation Cannot Adequately Represent the Tribe's Interests

When the Court addressed Rule 19 in the limited TRO context, it found that Live Nation "may adequately represent" the Tribe because Live Nation was "likely to argue" that the Tribe "did not directly infringe on the Coachella Marks." Order at 5. Even assuming Live Nation does argue that the Tribe did not directly infringe, it still could not adequately represent the interests Mr. Mike articulates in his declaration.

First, the indemnity agreement between the Tribe and Ticketmaster creates a conflict of interest. As the Ninth Circuit has held, "a nonparty cannot be adequately represented by a person with whom he is in conflict." *Kourtis v. Cameron*, 419 F.3d 989, 997 (9th Cir. 2005), *abrogated on other grounds by Taylor v. Sturgell*, 553 U.S. 880 (2008). Indeed, a "potential conflict" is sufficient to defeat an argument of adequate representation. *Shermoen v. United States*, 982 F.2d 1312, 1318 (9th Cir.

1  1992); *see also Am. Greyhound Racing*, 305 F.3d at 1023 n.5 (finding no adequate

2  representation based on "potentially adverse" interests).

3        Here, the Tribe contends that Live Nation might prioritize litigating this case

4  in a way that triggers indemnity, rather than prioritizing success on the merits. Mike

5  Decl. ¶ 17. The Tribe likens this conflict to that arising in the insurance defense

6  context, where *Cumis* counsel must be hired "to eliminate the ethical dilemmas and

7  temptations that arise . . . where the insured is trying to obtain coverage and the

8  insurer is trying to avoid it." *Edwards v. Wilshire Insurance Co.*, CV 15-00793-

9  RGK (SSx), 2015 WL 12645747, at *8 (C.D. Cal. Nov. 13, 2015) (Klausner, J.).

10  Live Nation cannot discuss the Tribe's stated concerns without potentially

11  prejudicing its own position should a dispute later arise between Ticketmaster and

12  the Tribe—a conundrum that underscores why Live Nation cannot adequately

13  represent the Tribe's interests—but agrees that there is a "potential conflict" here.

14  *See Shermoen*, 982 F.2d at 1318.

15        Second, Live Nation cannot adequately represent the Tribe's interests because

16  Live Nation cannot compel the Tribe to produce all relevant evidence concerning

17  the co-existence agreement between the AEG and the Tribe, or the Tribe's adoption

18  and use of the COACHELLA CROSSROADS mark. *See id.* (considering whether

19  party is "capable of" making the absent party's arguments); *Advanced Dynamic*

20  *Interfaces, L.L.C. v. Aderas Inc.*, No. 12-CV-963 (GMS), 2013 WL 6989428, at *1

21  (D. Del. Jan. 11, 2013) ("Oracle's superior understanding of the APEX products and

22  greater access to relevant documents and individuals may result in Oracle's interests

23  being inadequately represented"). Indeed, the Court found in its Order that "*without*

24  *evidence to the contrary*," the Tribe's conduct "appears to be intentional"—a fact

25  supporting a finding of direct and contributory liability. Order at 8 (emphasis

26  added). Only the Tribe can supply "evidence to the contrary" showing its good-faith

27  subjective intent in adopting the COACHELLA CROSSROADS mark, yet the Tribe

28  is outside the subpoena power of this Court. See *Shermoen*, 982 F.2d at 1318

LIVE NATION'S MEMO ISO MOTION TO DISMISS
UNDER FED. R. CIV. P. 12(B)(7)

-13-

1  (considering "whether the absent party would 'offer any necessary element to the

2  proceedings'").

3         Third, the Tribe's claimed interest in its COACHELLA CROSSROADS mark

4  goes well beyond any interest Live Nation may have in the content of the

5  Ticketmaster platform. Live Nation cannot speak for the Tribe's historical and

6  cultural interest in the term "Coachella." *See Cemex, Inc. v. County of Los Angeles*,

7  92 F. App'x 457, 460 (9th Cir. 2004) (no adequate representation where absent party

8  "has interests . . . independent of" party). Nor does Live Nation share the Tribe's

9  interest in defending against the full scope of Plaintiffs' proposed injunction, which

10  would affect every person "affiliated" or "working in concert" with the Tribe, not

11  just Live Nation. *See Shermoen*, 982 F.2d at 1318 (considering whether the party

12  "will *undoubtedly* make all of the absent party's arguments") (emphasis added);

13  *Corinthian Colls., Inc. v. Carew Int'l, Inc.*, No. SACV-90424-AGR (Zx), 2009 WL

14  10674338, at *4 (C.D. Cal. Sept. 4, 2009) ("While KHEC and Carew's interests

15  might overlap, . . . 'Carew cannot be expected to . . . completely discuss how

16  Corinthian's proposed injunction would harm KHEC.'").

17         Live Nation, therefore, will not adequately represent the Tribe's interests in

18  this litigation.

19         **D.     The Rule 19(b) Factors Favor Dismissal with Prejudice**

20         As discussed, once a tribe is deemed "required" under Rule 19(a)(1), a "wall

21  of circuit authority" favors dismissal without balancing the Rule 19(b) factors. *Dine*

22  *Citizens*, 932 F.3d at 857; *see also Jamul Action Comm. v. Simermeyer*, 974 F.3d

23  984, 998 (9th Cir. 2020) ("The balancing of equitable factors under Rule 19(b)

24  almost always favors dismissal when a tribe cannot be joined due to tribal sovereign

25  immunity."). Nonetheless, each of these factors weighs in the Tribe's favor,

26  confirming that dismissal is required. Such dismissal should be with prejudice, as a

27  dismissal based on sovereign immunity cannot be cured by amendment. *See*

28  *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008)

LIVE NATION'S MEMO ISO MOTION TO DISMISS                                    -14-
UNDER FED. R. CIV. P. 12(B)(7)

1   (recognizing that dismissal with prejudice is proper when amendment would be

2   futile).

3          The first factor, prejudice to the Tribe, "largely duplicates the consideration

4   that made a party necessary under Rule 19(a)," *Dine Citizens*, 932 F.3d at 857, and

5   the *five* interests claimed by the Tribe mean this factor "clearly favors dismissal in

6   this case." *See id*.

7          The second factor, the Court's ability to shape relief so as to avoid prejudice,

8   also favors dismissal. In this case there is no way for the Court to fashion

9   meaningful relief without prejudicing the Tribe's interests discussed in the Mike

10  Declaration. Indeed, the *only* potential way to avoid prejudicing the Tribe in any of

11  the five ways identified would be for the Court to award *nothing more* than

12  injunctive relief, solely against the named Defendants (and not those "working in

13  concert" with them) and solely concerning the mark COACHELLA DAY ONE 22,

14  which would be moot in any event because that mark identified an event that

15  occurred in the past. An injunction concerning other COACHELLA-formative

16  marks, or against the numerous non-parties included in Plaintiffs' Request for

17  Relief, not to mention any monetary award, would prejudice the Tribe. This factor

18  therefore weighs in favor of dismissal.

19         The third factor, whether a judgment would be "adequate" absent the Tribe,

20  weighs in favor of dismissal because "[g]oing forward with the action without [the

21  Tribe] would not further the public interest in settling the dispute as a whole," as the

22  Tribe "would not be bound by the judgment." *Republic of Philippines v. Pimentel*,

23  553 U.S. 851, 870–71 (2008). Further, the Court's interpretation (or decimation) of

24  the co-existence agreement between the Tribe and AEG "could lead to inconsistent

25  rulings down the road." *Fid. Nat'l Title Ins*., 2015 WL 12765114, at *6.

26         As to the fourth factor, whether Plaintiffs "will have an adequate remedy"

27  available, it may be that the Tribe's sovereign immunity bars adjudication.

28  However, the Ninth Circuit has repeatedly noted that the "lack of an alternative

LIVE NATION'S MEMO ISO MOTION TO DISMISS                                    -15-
UNDER FED. R. CIV. P. 12(B)(7)

forum does not automatically prevent dismissal of a suit[.]" *Pit River Home and Agric. Coop. Ass'n v. United States*, 30 F.3d 1088, 1101–02 (9th Cir. 1994) (quoting *Makah Indian Tribe v. Verity*, 910 F.2d 555, 560 (9th Cir. 1990)). Notably, however, even if—*arguendo*—"both the third and fourth factors" weighed against dismissal, dismissal would still be proper. That is because the lack of an alternative remedy "is a common consequence of sovereign immunity," and the Ninth Circuit has "regularly held that the tribal interest in immunity overcomes the lack of an alternative remedy or forum for the plaintiffs." *Dine Citizens*, 932 F.3d at 858; *see also Kescoli*, 101 F.3d at 1311 (holding that even where "the third and fourth factors" weigh against dismissal, "a plaintiff's interest in litigating a claim may be outweighed by a tribe's interest in maintaining its sovereign immunity").

## IV.   CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint with prejudice.

DATED: February 3, 2022        Respectfully submitted,

KILPATRICK TOWNSEND & STOCKTON LLP

By:   /s/ *Christopher T. Varas*
      CHRISTOPHER T. VARAS
      LARRY W. MCFARLAND

Attorneys for Defendant Live Nation Entertainment, Inc.